F. P. McKay Company, Appellee, v. Savery House Hotel Company, Appellant, et al.

LANDLORD AND TENANT: Recovery of Possession—Right of Sub-
1   Tenant. Counsel concede that a sub-tenant has no greater right
than his immediate landlord, and that, if the latter fails to pay
*his* rent to the head landlord, the head landlord may remove
both the tenant and the sub-tenant from the premises, even
though the sub-tenant is not in arrears on *his* rent. Evidence
reviewed, on the plea that said principle was not applicable be-
cause, by a certain contract, the head landlord and tenant had
surrendered the lease and the head landlord had become the
real landlord of the sub-tenant, and held not to support the plea.

LANDLORD AND TENANT: Recovery of Possession—Forcible De-
2   tention—Notice. When the officers of the landlord and the of-
ficers of the defaulting sub-tenant are the same persons, a no-
tice by the landlord to the sub-tenant to remove from the prem-
ises is not illegal because signed in the names of its officers and
served by one of them on the other as an officer of the default-
ing sub-tenant.

LANDLORD AND TENANT: Recovery of Possession—Forcible De-
3   tention—Length of Notice. While the statute requires a three
days' notice as preliminary to an action of forcible detention,
yet the tenant may not complain if the landlord gives a fifteen
days' notice. (Sec. 4210, Code, 1897.)

LANDLORD AND TENANT: Recovery of Possession—Right of Re-
4   moval—Conflicting Clauses. The right of the landlord to re-
move the tenant for nonpayment of rent is not withdrawn by a
clause under which the landlord might have served a 30 days'
notice of demand for compliance, and in default of such com-
pliance caused the rent for the entire term to become due.

*Appeal from Polk District Court.*—Joseph E. Meyer, Judge.

June 27, 1918.

Rehearing Denied September 20, 1918.

Action in equity to enjoin the defendants from tearing down the Savery Hotel building in Des Moines, and from

interfering with the possession of plaintiffs, who were tenants of certain storerooms and other portions of said building, and to enjoin defendants from interfering with plaintiff's means of ingress and egress, and to enjoin defendants from commencing legal proceedings to obtain possession of the property. After a hearing, a temporary injunction was issued, as prayed, from 'which the defendant Savery House Hotel Company appeals.—*Reversed.*

*Parrish & Cohen,* for appellants.

*Clark, Byers & Hutchinson,* for appellee.

Preston, C. J.—The Savery House Hotel Company is the owner of the real estate, and the Savery Hotel Company, incorporated, was the operating company conducting the hotel business. For convenience, we shall

1. Landlord and Tenant: recovery of possession: right of sub-tenant.

refer to the owner as the House Company, and to the other as the Hotel Company. Recently, there has been organized the Savery House Building Company, which was to build a new hotel.

The petition alleges, substantially, that the hotel building had been leased by the House Company to the Hotel Company until the year 1925; that, on November 12, 1914, the Hotel Company, by written lease, sublet to plaintiff a storeroom in the building, together with a basement and space in the lobby, for a term ending March, 1925, to be used as a drug store; that defendants are about to tear down the hotel building, and will evict, or attempt to evict, plaintiff from the premises; that plaintiff will suffer irreparable injury, and has no adequate remedy at law.

To this petition, the Hotel Company filed no answer, and made no appearance. The appellant, the House Company, says that it leased all of said premises for a term of years to the Hotel Company, and that plaintiff is a subtenant of the Hotel Company; that the Hotel Company has

forfeited its lease with the House Company, by reason of the failure to pay the rent reserved in the lease; and that the lease has been cancelled and forfeited because of such non-payment. Appellant admits that it contemplates the destruction of the hotel building, and claims the right to dispossess the plaintiff; denies that plaintiff has no adequate remedy at law.

The reply says, among other things, that, if the Hotel Company did fail to pay rent, and if notice to forfeit and cancel the lease between the Hotel Company and the House Company was given, and possession demanded, that said refusal to pay rent was in accordance with a previous fraudulently concocted scheme between J. E. Tone and Gerard S. Nollen, the said parties being, respectively, the president and the secretary and treasurer of both companies; and that said scheme was concocted between said parties for the sole purpose of making it appear that the lease of the Hotel Company had been forfeited; that the Hotel Company was able to pay its rent, if it was in possession of the premises; and that its refusal to pay rent was a part of the fraudulent conspiracy and scheme referred to, and for the purpose of assisting the House Company and its officers in ousting plaintiff; second, that in March, 1917, the stock of the Hotel Company was owned by one Christian and one Hedrick and their wives; that, at that time, the Hotel Company was owing rent to the House Company, and, for the purpose of adjusting the rent and terminating or surrendering the lease between the two companies, the said Christian and Hedrick, acting for the Hotel Company, negotiated with Tone and Nollen, acting for the House Company, whereby it was agreed that, on the payment of certain sums of money, and other arrangements, the Hotel Company should be excused from paying the rent then due, and should surrender possession of the premises to the House Company, and that the House Company should take

care of and protect the sub-tenants of the Hotel Company; that, pursuant to such arrangement, the possession of the Hotel Company was turned over to the House Company, and the lease was, in effect, surrendered by the Hotel Company; and that thereafter, the House Company operated the hotel, recognized the lease of this plaintiff, and accepted rent from plaintiff; that, by reason of the foregoing, the House Company became, in effect, the assignee of the lease, or accepted the surrender of the lease, and became thereby the actual landlord of plaintiff, and recognized its lease, and accepted rent thereunder, and is now estopped to claim that plaintiff has no right under its lease.

As before stated, plaintiff claims under its lease with the Hotel Company of November 12, 1914, which was a new lease by said parties. But appellee alleges in its reply that it was in possession of the part of the building occupied by it under a prior lease with the House Company, which lease had then some years to run; and that, in a later lease between the Hotel Company and the House Company, plaintiff's lease was recognized, and the Hotel Company was authorized to renew said lease or again sublet said premises to plaintiff, which it did, from time to time; that the premises occupied by plaintiff are not necessary for the purpose of operating the building as a hotel. Plaintiff alleges that, by reason of the foregoing, the House Company has waived the right to and is estopped to claim that plaintiff is not entitled to the possession of the premises under its lease. Under the circumstances, it seems to us that the fact of plaintiff's having occupied the premises before its last lease is not very material.

In the reply, plaintiff further claims that the tearing down of the hotel building is contrary to public policy, under present conditions, and is only done that the House Company may make more money.

It should have been stated, if not already done, that the

lease from the House Company to the Hotel Company provided for a forfeiture for a nonpayment of rent. The lease from the House Company to the Hotel Company was, in 1910, extended to April 15, 1925, and the monthly rental was to be $2,000, and in addition, interest on certain sums of money when advanced.

There was evidence tending to sustain the allegations of the pleadings, but we think the conclusions sought by plaintiff to be drawn from the evidence are not sustained at all points. In fact, there is but little dispute in the testimony, and there seems to be but little dispute between counsel as to the law of the case.

Appellant cites authority in support of its point that, because plaintiff was a sub-tenant of the Hotel Company, it was chargeable with notice and bound by the terms of the contract by which the Hotel Company had possession of the premises (Tiffany on Landlord and Tenant, Sections 163, 164; *Foster v. Reid,* 78 Iowa 205, 206; and other cases) ; and that there is no privity of contract between the head landlord and sub-tenant,—hence no right of action for rent or indemnity (*Crowe v. Riley,* 63 Ohio 1 [57 N. E. 956]) ; and further, that plaintiff is not entitled to maintain this suit because it has not offered to do equity and pay the House Company the rent reserved in its lease to the Hotel Company, for that a sub-tenant, in order to maintain possession, must pay the rent due the head landlord (citing Tiffany on Landlord and Tenant, Sections 164, 177, and other cases).

Appellee seems not to dispute these legal propositions. Appellee concedes in argument that, the House Company having originally rented the building, including plaintiff's part, to the Hotel Company, if the Hotel Company had failed to pay the rent, and the House Company had thereupon forfeited the lease for that reason, and taken possession of the premises, the plaintiff being a sub-tenant of the Hotel Com-

pany, plaintiff's rights could be no greater than that of its immediate landlord, the Hotel Company; and that, in such case, the House Company, the owner, had the right to eject both the Hotel Company and its sub-tenant, plaintiff. They say that, if this were all there was to the case, and there were no other equities, the House Company would have stated a good defense. This being so, it is unnecessary for us to spend any time on that proposition, and we shall turn now to what we regard as really the vital point in the case.

Appellee contends that it has become the tenant of the House Company. It seems to us that, before plaintiff can succeed in such claim or in this action, there must have been some new agreement or arrangement, or the circumstances must be such that the House Company was plaintiff's landlord, and had stepped into the place of the Hotel Company. This, appellee claims was done, in some way, or at least that the House Company has waived its right to claim otherwise, and is estopped from so doing. The claim is that this was effected because of the agreement made in March, 1917, between Christian and Hedrick on the one side, and Tone and Nollen on the other, and the conduct of the parties thereafter. This agreement will be referred to later. As we understand it, plaintiff denies that the Hotel Company was behind in the rent, and claims that, under its construction of the evidence, Tone and Nollen were acting for the Savery House Company, and that the Hotel Company, in effect, surrendered its lease to the House Company, and that thereafter, the House Company, and not Tone and Nollen or the Hotel Company, operated the hotel for a time, and that the House Company recognized the plaintiff's lease and accepted rent from it. Appellant contends, at this point, that Tone and Nollen were acting for themselves in part, and for the Hotel Company in operating the hotel, and that there was no surrender of the Hotel

Company lease, but that it was later forfeited for non-payment of rent. It seems to us that plaintiff assumes a state of facts not warranted by the evidence.

When the ten-year lease from the House Company to the Hotel Company was made, in 1905, one W. W. Witmer was the president of the Hotel Company, and the owner of a majority of the stock. Mr. Witmer died in 1916, and after his death, J. E. Tone was elected president of the House Company, and Gerard S. Nollen was elected secretary and treasurer of that company, and so continued down to the time of the trial. In 1910, the stock of the Hotel Company, the operating company, was acquired by Christian and Hedrick, except a few shares; and, upon their purchasing the stock of the Hotel Company, they entered actively upon the management and operation of the hotel, and, as before stated, at this time their lease was extended until April, 1925. The Hotel Company continued to operate the hotel and pay rent until January, 1916, at which time it was in arrears on the rent in the sum of $2,000. From this time on, the operation of the hotel seems to have been unprofitable, due, possibly, to the run-down condition of the building, and the arrearage in rent increased until January, 1917, when there was due to the House Company from the Hotel Company for back rent about $13,000 or $14,000, for which a note seems to have been given. As said, at this time Christian and Hedrick, with their families, were the owners of the stock of the Hotel Company, and were managing the hotel. About this time, Tone and Nollen, who were officers of the House Company, and were authorized by the directors, were pressing the Hotel Company for payment of the past-due rent, but the Hotel Company was unable to pay. The Hotel Company then owned the furniture in the hotel, which, the evidence tends to show, was worth $40,000. The situation was such that, about January 20, 1917, a written contract was entered into by

Christian and Hedrick, representing themselves and the stockholders of the Hotel Company; Tone and Nollen, representing themselves, as appellant contends (but appellee says they were acting under a resolution passed by the directors of the House Company); and the House Company. This contract was signed by the House Company, by Tone, President, and he says he was authorized to so sign for the House Company. It was also signed by J. E. Tone and G. S. Nollen, individually, and by George M. Christian and H. L. Hedrick. As we shall see later, there were three parties to this contract. Prior to this agreement, and on January 9, 1917, at the annual directors' meeting of the House Company, a resolution was passed, empowering the president and secretary of that company to take any steps needful to protect the interests of the House Company in connection with the defaulting in the payment of the rent by the Hotel Company. By this contract, Christian and Hedrick agreed to sell and transfer to said Tone and Nollen, or to such parties as they should direct in writing, all the capital stock of the Hotel Company, to be delivered March 15, 1917; and the contract made provisions as to what property the Hotel Company should have, and what debts it should owe on the date of the transfer, Christian and Hedrick personally agreeing to pay all the debts of the Hotel Company except certain specified debts. Christian and Hedrick were to pay the first half of the taxes for 1916, but they were relieved from the payment of the second half. Among the exceptions that Christian and Hedrick were not to pay, was the rent accrued and to accrue up to March 15, 1917. It was agreed on the part of Tone and Nollen that they would see that the Hotel Company should be continued in the operation of the hotel until March 15th, subject to the terms of the agreement. The furniture was turned over, as agreed, but Christian and Hedrick were allowed to occupy the prem-

ises rent free from January 20, 1917, to March 15th of the same year.

Pursuant to this agreement, Tone and Nollen, on March 15, 1917, took over the stock of the Hotel Company; the furniture was delivered to them; they took possession of the hotel, and thereafter had active management of the hotel for the Hotel Company, as appellant contends, until March 12, 1918, when the lease of the Hotel Company was forfeited. At about this time, Tone was elected president of the Hotel Company, and Nollen was elected secretary and treasurer; so that, for about a year before the trial, these men were officers of both companies. For about a year, all of the stock of the Hotel Company was held by Tone and Nollen and their wives, their wives being daughters of Witmer, deceased; and the board of directors of the Hotel Company was made up of these same four persons. They were also stockholders and directors of the House Company; but there were other substantial stockholders of the House Company who were not stockholders in the Hotel Company. Tone and Nollen were unable to operate the hotel at a profit after they took possession, and were able to pay only $9,500 on the rent during 1917; so that there was, altogether, about $28,000 due on back rent on January 1, 1918.

In January, 1918, at the stockholders' meeting of the House Company, Mr. Tone, as president, reported that the Hotel Company had been unable to carry on the business of operating the hotel successfully. He also reported that there might be enough value in the furniture to make good at least part of the amount, if it became necessary to insist that the Hotel Company should surrender the property. In response to this report, the directors of the House Company authorized the president and secretary to use their discretion and best judgment in the management of the affairs of the company, and particularly as pertained to the collection of rentals from the Hotel Company.

A short time after this report to the House Company as to the condition of the rent, and on February 2, 1918, the Hotel Company, by Tone and Nollen, executed a bill of sale to the House Company for all the furniture in the building for a named consideration of $9,637.50, and recited that it was in full settlement and payment for rent to January 1, 1918, except a note of $13,000, bearing date March 16, 1917.

Some time prior to January, 1918, and, in fact, before Mr. Witmer's death in the fall of 1916, there had been more or less talk about the building of a new hotel, and in January, 1918, a party from Cleveland came to Des Moines, when negotiations were taken up which ended in the execution of a lease, March 2, 1918, between Tone and Nollen, as trustees for a new corporation to be formed, and the Cleveland party, as the operator of the new hotel when built. Up to that time, nothing had been said to plaintiff by anyone representing the Hotel Company or the House Company as to the building of the new hotel or what effect it might have upon the property plaintiff had leased. A few days after that, plaintiff was informed by Tone that the Hotel Company was bankrupt, and had not paid its rent, and that nothing could be done about taking care of plaintiff's lease. This was on March 6th. Plaintiff was not delinquent in the payment of its rent, it having been paid at the office of the hotel.

March 12, 1918, notice to quit was served on plaintiff by the House Company, to the effect that it had cancelled its lease with the Hotel Company on account of nonpayment of rent, and had notified the Hotel Company to surrender possession in 15 days; and the subtenants were notified to surrender possession in 15 days, or resort would be had to legal procedure. The House Company also served like notice upon the Hotel Com-

2. LANDLORD AND
TENANT: re-
covery of pos-
session: for-
cible deten-
tion: notice.

pany. The notice to the Hotel Company is signed by the House Company, by Tone, President, and Nollen, Secretary. It was served by Nollen, acting for the House Company, upon Tone, as an officer of the Hotel Company. Appellee complains—though we think not seriously—of the manner of service. It is true Tone and Nollen were officers in both companies, but the corporations were two distinct organizations. We think the officers had the right to so act without uniting the two companies. The Hotel Company seems to have complied with the notice before the 15 days had expired; but the subtenants refused to vacate, and brought this suit to enjoin the House Company. Such is the general situation, briefly stated.

Appellee's propositions are, substantially, that there was collusion and fraud against plaintiff, in that defendants were attempting to make it appear that the Hotel Company was in default for nonpayment of rent. But as to this point, under the evidence, we are of opinion that there can be no question that the amount of rent was due, as claimed, and that there was default. This being so, we shall spend no further time on this point.

Another proposition by appellee is the claim that the agreement of January 20, 1917, between Christian and the others, was, in effect, a voluntary surrender to the House Company of the lease held by the Hotel Company; and that such voluntary surrender of the lease and the possession of the premises could not in any way affect plaintiff's right under its lease; and that the House Company, having, since the surrender, recognized plaintiff's lease by collecting rent thereunder, and in other ways, is now estopped and has waived the right to claim that plaintiff's lease is not in full force and effect. This we regard as the vital point in the case, and we shall consider it first, and refer to the other points later. It may be remarked in passing, however, that we do not think the evidence shows that the House Com-

pany did collect rent from plaintiff under the lease. The evidence is, rather, that the rent was paid to the Hotel Company, until the Hotel Company's lease was forfeited by the House Company. Thereafter, and on March 18, 1918, plaintiff sent a check to the order of the Hotel Company for the March rent, which was not accepted, and the check was returned, for the reason, as stated in a letter from the Hotel Company, that the Hotel Company was not in possession of the property, its lease having been cancelled.

Another proposition of appellee's is the claim that, even if the transaction of January 20, 1917, was not a surrender of the lease, the attempted cancellation by the notice of March 12th, and the surrender of possession thereafter by the Hotel Company before the expiration of 15 days, was a voluntary surrender of the lease, which could not affect the right of plaintiff. They say, too, that the provisions of the lease must have been strictly complied with by the House Company, in order to work a forfeiture of the lease.

As to the alleged surrender on January 20, 1917, and the claim of plaintiff that the House Company now stands as direct landlord of plaintiff, appellee cites *Buttner v. Kasser,* 19 Cal. App. 735 (127 Pac. 811, 813) ; 24 Cyc. 1367, 1378; *Weiss v. Mendelson,* 24 Misc. Rep. 692 (53 N. Y. Supp. 803) ; *Albiani v. Evening Trav. Co.,* 220 Mass. 20 (107 N. E. 406, 408). The last-named case is cited also on the proposition as to the surrender or vacation by the Hotel Company before the expiration of 15 days. In the first Cyc. citation, the rule is stated that a surrender is created by operation of law when the parties to a lease do some act so inconsistent with the subsisting relation of landlord and tenant as to imply that they both agreed to consider the surrender as made. The second Cyc. citation gives the rule as to the rights of the parties where there has been either an express surrender or surrender by operation of law. The other cases cited are to the same effect.

In the *Albiani* case, there was a written agreement which, in terms, was a surrender; and the holding was that this, with the payment of a large sum of money, concurrently with the release of one of the parties from the covenants of the lease, with the other circumstances in the case, constituted a surrender.

As said, we understand appellee to admit that, from the time of the execution of the lease by the Hotel Company to plaintiff up to the time of the execution of the contract between Christian and others, January 20, 1917, plaintiff was a subtenant, and was bound by all the stipulations contained in the principal lease; and that if, during this time, plaintiff's immediate landlord had failed to pay its rent, the head landlord would have had the right to cancellation; and that this would have operated to cancel the rights of the plaintiff. Appellee says, however, that the rights of the parties were changed by the contract of January 20th; and this is the main point upon which they rely.

We have already stated that, on January 1, 1916, the Hotel Company was in arrears, and on January 1, 1917, for a still larger amount, and on March 12, 1918, a still larger indebtedness was due the House Company for rent. The Hotel Company was unable to pay, and the House Company was pressing for payment. The contract of January 20th recites, substantially, that, in consideration of the various obligations assumed by the several parties and benefits to accrue, the House Company, party of the first part, Tone and Nollen, parties of the second part, and Christian and Hedrick, parties of the third part, agree, etc. Plaintiff says that Tone and Nollen could not act for themselves and for the House Company, and this would be a fraud upon the House Company. Possibly the House Company might have rescinded the contract or claimed the benefits, if any, which occrued to Tone and Nollen. But the House Company is not complaining, and it seems to us that no

one else can.   Appellant contends that the reasons inducing
Tone and Nollen to act for themselves in acquiring control
of the Hotel Company are that their holdings in the House
Company were comparatively small, there being 18 persons
who held stock in the House Company other than Tone and
Nollen; and that the last-named parties did not feel at lib-
erty to involve the House Company in the operation of the
hotel, but were willing to themselves operate it, in the hope
that they might make a success of the operation of the hotel,
and thus assure the House Company the payment of its
rent; and that, incidentally, this would have protected the
plaintiff in the rights which it acquired under its sub-lease.
At any rate, Tone and Nollen did act for themselves in mak-
ing this contract.   It should be noted that the Hotel Com-
pany was not a party to the contract of January 20th.
Neither it, nor anyone assuming to act for it, attempted by
the contract to change its rights or obligations.   Tone and
Nollen were buying for themselves, and Christian and Hed-
rick were selling the stock of the Hotel Company, and not
the lease or any rights of the Hotel Company.   Though the
contract was executed January 20th, it was not to be car-
ried out until March 15th; so that the value of the stock
of the Hotel Company which was to be transferred on March
15th depended upon its then assets and liabilities.   There
were provisions of the contract bearing upon this proposi-
tion.   Christian and Hedrick were to pay all debts of the
Hotel Company which were unpaid on March 15th, with
certain exceptions.   They also agreed that all the property
upon the premises when the contract was made should be
upon the premises at the time of the transfer, except sup-
plies consumed from day to day, and the like, in the ordi-
nary operation of the hotel, and they agreed to conduct the
hotel until March 15th as it had been before.   Provision was
also made for taxes and rent, as before stated.   The con-
tract further provided:

"There now being contracts of lease of storerooms and contracts for the exercise of privileges connected with the operation of said hotel, and it being possible that the rent under such leases, or the payment for such privileges, may have been by the parties interested therein extended beyond March 15, 1917, it is expressly agreed that there shall be paid to said. Tone and Nollen, for Savery Hotel Company, any portion of said money so paid covering any period beyond March 15, 1917."

Under the contract, Christian and Hedrick were not to pay the rent due and to accrue to the House Company up to March 15th, and the liability for this was to exist as against the Hotel Company; and Christian and Hedrick guaranteed that the Hotel Company should, during the interim, comply with all the conditions of the lease except the payment of rent. It was doubtless the intention of the parties that Christian and Hedrick should have the profit, if any there might be, in the operation of the hotel up to March 15th, after paying the expenses of operation, but not including the rent. But there was a considerable sum due for rent, and the House Company could at any time cancel the lease for nonpayment of rent, or it could enforce its landlord's lien; so that it was necessary for the House Company to become a party to the contract to assure Christian and Hedrick the right to operate the hotel until March 15th without using the assets of the Hotel Company for the payment of rent. This was covered by the contract, the House Company and Tone and Nollen agreeing that the Hotel Company should be continued in the operation of the hotel until March 15th, subject to the terms of the lease. It was the Hotel Company which was to continue in the operation of the hotel. It would seem to be reasonably clear, then, that it was not the intention of the parties that the lease between the House Company and the Hotel Company should be cancelled, or that the House Company should acquire the

stock of the Hotel Company, or the lease, or undertake to operate the hotel; and that what was, in fact, done did not have that effect.   The conduct of the parties thereafter, as before related, indicates that it was not intended by the contract to change the relations between the Hotel Company and the House Company.

We do not understand counsel for plaintiff to claim that anything was done between January 20, 1917, and March 12, 1918, in the way of cancelling or surrendering the lease, except that, as we understand it, they claim that the conduct of the parties, or some of them, after January 20th, tends to strengthen their claim that the contract of January 20th had that effect.   We think the House Company had the right to cancel its lease with the Hotel Company on March 12, 1918, and that it did so.   There is no doubt that the Hotel Company was indebted to the House Company for back rent on March 12, 1918.   The Hotel Company was in possession under its lease with the House Company on that date, and the House Company had the right at that time to cancel the lease for nonpayment of rent, unless it had been cancelled at a prior date, as contended by appellee.   We have already indicated that, in our opinion, there was not such a cancellation on January 20th.   Code Section 4208 provides a summary remedy for forcible entry and detention of real property for the nonpayment of rent when due, and Code Section 4210 provides for a three days' written notice to quit, except where defendant

3. LANDLORD AND
TENANT: recovery of possession: forcible detention: length of notice.

has, by force or fraud, etc., entered into the possession of the property.   Under the statute, the House Company had the right to cancel the lease upon three days' notice to the Hotel Company: that is, at least three days' notice is required, and the fact that a fifteen days' notice was served does not, we think, affect the validity of the notice.   Nor does the fact that the Hotel Company complied with the notice be-

fore the expiration of the fifteen days without a law suit, have the effect of making the surrender or cancellation voluntary, or affect the rights which the landlord acquires by his notice of election. We think the right

4. LANDLORD AND TENANT : recovery of possession : right of removal : conflicting clauses.

of the House Company to serve the three days' notice to quit is not affected by the provision in the lease in regard to a thirty days' written notice to comply with all the terms of the lease, and that, for default after such thirty days' notice, the whole amount of rent for the term may become due, or authorized the landlord to forfeit the lease. It seems to us that the most the plaintiff could claim under this would be an order which would permit it to remain in the premises during the thirty days after the fifteen days' notice was served. But we do not understand plaintiff to make any claim of that kind.

There may be some other points of minor importance, but those which we have discussed are decisive of the case. It is our conclusion that the contract of January 20, 1917, did not change the relations between the House Company and the Hotel Company, and did not work a cancellation or assignment, as contended by appellee, and that, consequently, there is no estoppel or waiver. It follows that the order of the district court in granting the temporary injunction was erroneous, and that it should be and is reversed, and the temporary injunction granted is dissolved.—*Reversed.*

WEAVER, GAYNOR, and STEVENS, JJ., concur.