M. T. BROWN AND SUSIE H. BROWN, Appellants, v. CAIRNS, BOLTON AND FOSTER, ALEXANDER CAIRNS, JOHN P. BOLTON AND HENRY A. FOSTER.

**Attachment: FUTURE RENT.**  Under McClain's Code, section 4170, authorizing attachment "previous to the time when the debt becomes due when nothing but time is wanting to fix an absolute indebtedness, and when the petition in addition to the facts states: (1) that the defendant is about to dispose of his property with intent to defraud his creditors," etc.,—there may be an attachment for future rent provided by a lease, though the lessor reserved the right to sell off part of the property reducing the future rental sixty cents an acre for such reduction, or to sell the entire property, subject to the lease, or to a forfeiture to the lessee of one years' rent, being the rent for last years' occupancy.

**Landlord and Tenant: SURRENDER OF LEASE.**  A lease is not surrendered by operation of law because the landlord, after his tenant has vacated and abandoned the premises without cause, assumes possession thereof and releases them to another after giving notice to the original tenant of his intention to hold him for the rent reserved and that he has resumed possession for the purpose of protecting the reversion and has re-let to reduce the damages which he might otherwise sustain.

**SAME.**  A tenant is not excused from his liability to pay rent because he notified his landlord of his intention to surrender the possession to the premises and did surrender them and the latter leased the premises to another who entered into possession, where the second leasing was made after the commencement of an action to recover rent.

**SAME.**  A tenant is not released from his liability upon a special covenant to pay rent because he never occupied the premises or in any manner took possession of or asserted a right thereto.

*Appeal from Dallas District Court.*—HON. J. D. GAMBLE, Judge.

FRIDAY, DECEMBER 16, 1898.

ACTION at law, aided by attachment, to recover rent reserved in a lease made by plaintiffs to the defendants. The

defendants moved to dismiss and discharge the attachment. They also pleaded a surrender of the lease, to which pleading the plaintiffs demurred. The demurrer being overruled, plaintiffs filed a reply, to which defendants demurred, and this demurrer was sustained. Defendants appeal from an order overruling their motion to discharge the attached property, and plaintiffs from the ruling on the demurrers. As plaintiffs have styled themselves appellants, they will be so designated in this opinion. *Affirmed* on defendants' appeal. *Reversed* on plaintiffs' appeal.

*Denshee & Allen* and *T. R. North* for appellants.

*White & Clark* for appellees.

DEEMER, C. J.—In November of the year 1894 appellants leased to the appellees, for the term of ten years, a tract of land of some two thousand acres, situated in Coffey county, Kansas, for the agreed rental of one thousand dollars for each of the first five years and one thousand five hundred dollars for each of the remaining five, payable in two equal cash payments, on the first days of June and December in each year. The term was to commence on the first day of March, 1895, and continue for ten years from that date. Defendants went into possession under the terms of the lease, and continued to use and occupy the property until March 1, 1897, at which time they abandoned it. This action was commenced on the eleventh day of January, 1897, after plaintiffs had been notified by the defendants that they intended to abandon the premises, and was for the rent accruing in June and December, 1898. Plaintiffs alleged that nothing but time was wanting to fix an absolute indebtedness, and that defendants, among other things, were about to dispose of their property with intent to defraud their creditors. Upon these allegations a writ of attachment issued, which was levied upon certain property not necessary to be more particularly mentioned. A copy of the lease was attached to the petition.

Defendants' motion to discharge was based upon the grounds that no indebtedness was due the plaintiffs; that there was no indebtedness now due; that no indebtedness could arise under the lease for the year 1898 until defendants had used and occupied the property for that year; and consequently that the indebtedness was contingent. The statute under which the attachment issued is as follows: "The property of a debtor may be attached previous to the time when the debt becomes due when nothing but time is wanting to fix an absolute indebtedness, and when the petition in addition to that fact states: (1) That the defendant is about to dispose of his property with intent to defraud his creditors," etc. McClain's Code, section 4170. The argument in support of the motion to discharge proceeds upon the theory that liability under the lease was contingent on the use and occupation of the property by the lessees, and on the further condition that the lessors did not dispose of the property during the term created by the lease. It is said that the statute must be strictly construed, and, if there is no debt within the meaning of the statute, the attachment should be discharged. This is no doubt correct, and the only question to be determined in this connection is whether there was a debt as to which nothing but time was wanting to fix an absolute indebtedness at the time the action was commenced. Appellees contend that there can be no indebtedness for rent until after use and occupation of the leased premises for the time for which the rent is claimed, and they quote the old definition of "rent," i. e. that "it is a certain profit, either in money, provisions, chattels, or labor, issuing yearly out of lands and tenements in return for their use." If this were what was at one time called an action of assumpsit to recover compensation for use and occupation of the premises, there would be no doubt of appellee's position. But it is clear that it is not such a case. It is what would be called, under the common-law forms of procedure, an action of debt or covenant on the express promise to pay at a fixed time a certain sum for the

use of the premises; and the law seems to be well settled that, in such case, the tenant is liable notwithstanding he may never use or occupy the premises. When there is a special covenant to pay the rent, the fact that the tenant never occupied the premises, or in any manner took possession of or asserted a right thereto, will not relieve him from liability upon his covenant, but he will be held to pay the rent for the full term. *McGlynn v. Brock,* 111 Mass. 219; *McMurphy v. Minot,* 4 N. H. 251; *Coy v. Downie,* 14 Fla. 544; *Bussman v. Ganster,* 72 Pa. St. 285. Neither the fact that the premises are destroyed by the casualties of war or by fire will relieve the tenant. In short, nothing, as a general rule, will relieve him from his covenant to pay rent for the whole term, save an actual eviction, a surrender, or an abandonment for legal cause. *Shaw v. Partridge,* 17 Vt. 626; *Fletcher v. McFarlane,* 12 Mass. 45. Of course, the rent is not due, and cannot ordinarily be collected, until the time arrives for its payment. But the obligation is created when a valid lease is entered into between the parties, and ordinarily nothing but time is wanting to fix an absolute indebtedness; for, as we have seen, it is entirely immaterial whether the tenant ever uses and occupies the premises or not. In the case of *Brace v. Grady,* 36 Iowa, 352, an action similar to the one under consideration was sustained as against a demurrer grounded upon the proposition that the rent was not due. See, also, *Clark v. Haynes,* 57 Iowa, 96. It will not do to say that there was no debt because the time of payment had not yet arrived. "A debt is created when one person binds himself to pay money to another. A party becomes indebted when he enters into an obligation to pay." Webster's Dictionary tit. "Indebted;" *Scott v. City of Davenport,* 34 Iowa, 208. See, also, cases cited in 8 Am. & Eng. Enc. Law (2d ed.), pp. 983, 984, 986. In the case of *Rowell v. Felker,* 54 Vt. 526, it is said: The liability of the tenants was fixed by the execution of the lease, and, if they could avoid that liability, the burden was on them to show a failure of consideration for

their promise, or some other legal defense. Their promise
to pay rent was absolute. It was a debt due to the landlord.
It was not dependent upon the happening of such contingency
as exempted it from attachment. See, also, *Downer v. Curtis,*
25 Vt. 650.

In construing section 2017 of the Code of 1873, which
provides that a landlord shall have a lien for his rent upon all
crops grown upon the demised premises, and upon all other
personal property of the tenant which has been used upon
the premises, during the term, etc., we have uniformly held
that the lien attaches to the property for the rent of the entire
term, although it can only be enforced for rent due. See
*Martin v. Stearns,* 52 Iowa, 345; *Gilbert v. Greenbaum,* 56.
Iowa, 211; *Merrit v. Fisher,* 19 Iowa, 354. If appellees'
contention in this case be correct, then it follows that there
should be no lien for rent until the premises are used and
occupied under the lease. The cases of *Bordman v. Osborn,*
23 Pic. 295, and *Stramann v. Scheeren,* 7 Colo. App. 1 (42
Pac. Rep. 191), relied upon by appellees, are not in point.
In the former the question turned upon the construction of a
statute making the stockholders of a corporation liable after
ceasing to be such for any debt contracted by the corporation,
or any debt so contracted by the corporation, or any debt so
contracted which might have accrued while they were stock-
holders, and it was held that no action could be maintained
against a stockholder for the rent of a quarter which com-
menced after he had sold out his shares, although the lease was
executed before such sale. Chief Justice Shaw, speaking for
the court, said: "It is manifest that the whole quarter's rent
sued for in this action began to accrue after the defendant
ceased to be a member." He further says: "The court are
of opinion that the liability of a retiring member is confined
to debts, properly so called, at the time of his ceasing to be a
member, and does not extend to executory contracts, not con-
stituting a debt of the corporation, payable presently or at a
future time, at the time of such retirement. The statute

makes the retiring member responsible for debts not his own, properly speaking. He stands, therefore, somewhat in the character of a surety or collateral obligor, and his liability is to be construed with reasonable strictness." In other words, it is held that the stockholder's liability is collateral and contingent, and that, if no debt existed against the corporation when he sold his stock, he was not liable. The latter case was a creditors' bill to set aside a conveyance of real estate between husband and wife. The creditor was a lessor of certain premises under a lease for the term of five years, which lease provided for entry upon default of any installment; and further provided that, if the building became untenantable, rents should cease until the landlord repaired, which he had the option to do, at his pleasure. The trial court found there was no fraud in the conveyance, but proceeded to adjudicate the respective claims. The decree provided that the deeds should be set aside and the property should be subjected to the payment of the debt, on account of some undefined ground hard to comprehend and not embraced in the issues. The court of appeals of Colorado reversed this decree, and held good the conveyance between husband and wife. During the course of the opinion it is said that there could be no debt, under the lease, so as to affect the conveyance between husband and wife, except by default in the advance payment and the occupation of the premises after such default, and that the inception of any debt for rent could only be after the default occurred; that then it was optional with the lessor to either allow a debt to be contracted as of that date, or to re-enter and terminate the tenancy.

Doubtless these decisions are correct, but they give little light on the question now before us, which is the construction of section 4170 of McClain's Code. It will be observed that it is not claimed that anything was due under the lease at the time the action was commenced. The allegation is that nothing but time was wanting to fix an absolute

indebtedness under the lease, and no attempt was made to enforce it until by its terms the rent was mature. But it is said that the debt was contingent, and that something other than time was wanting to fix the indebtedness. One of the provisions of the lease was as follows: "The parties of the first part hereby reserve the right to sell off any of the outside prices, not reducing the farm, however, to less than one thousand six hundred acres, reducing the future rental sixty cents per acre per year for such reduction; or to sell the entire farm, subject to the lease, or to a forfeiture to the parties of the second part of one year's rental, said forfeiture being the amount of the rent for the last year of occupancy of the place by the parties of the second part." This is said to create such a contingency as that something else than time is wanting to fix the indebtedness.   The consequences of a sale of a part or all of the farm are fully stated in this clause of the lease, and are so plain that implication is unnecessary.   This contingency is not one, however, which creates the debt.   It is one which may go to defeat it, but not one which must happen in order to fix an absolute indebtedness.   If it should happen, it would be a defense *pro tanto* or entire to an action for the rent. Moreover, the plaintiffs filed an amendment to their petition, in which they waived their right to dispose of the property during the years 1897 and 1898, and also waived their right to terminate the lease for non-payment of rent.   These waivers, made as they were, are no doubt binding upon the plaintiffs, for they constitute an election, from which they cannot hereafter recede.   Without these waivers, we think it clear, however, that the condition of the lease before quoted does not create a contingency the fulfillment of which is necescary to the creation of an indebtedness.

Further claim is made that the existence of the debt depends upon the lessees occupying the premises during the whole of the year 1898; whether or not they may be evicted prior to the expiration of the year 1898; whether or not they

abandon the property; and whether or not there was a termination of the lease before the expiration of the ten years. Suffice it to say, in answer to this claim, that none of these matters are conditions precedent to the creation of an indebtedness. They are all contingencies which may or might defeat the claim, but have nothing to do with its creation. When the first days of June and December of the year 1898 have arrived, then the obligation of the defendants to pay in accordance with the terms of the lease will become absolute under the facts alleged in plaintiff's petition, whether the defendants have used and occupied the property or not. We are of opinion that the motion to discharge the attachment was properly overruled. See, as sustaining our conclusion, the following cases, which are more or less in point: *Bacon v. Marshall,* 37 Iowa, 581; *Grant v. Whitwell,* 9 Iowa, 152; *Kiersled v. Railroad Co.,* 69 N. Y. 343; *Codman v. Jenkins,* 14 Mass. 93; *Weston v. Weston,* 102 Mass. 514; *Van Rensselaer v. Dennison,* 35 N. Y. 393; *Worthington v. Hewes,* 19 Ohio, 66; *Douglass v. Bank,* 19 Ala. 659.

II.   Defendants pleaded in defense that in December, 1896, they notified plaintiffs of their intention to surrender possession of the premises, and that they did surrender the same March 1, 1897; that plaintiffs accepted the surrender by entering into another contract of lease with one Dryer, by the terms of which they leased the whole of said premises to Dryer for the period of one year; that Dryer entered into possession and is now in the use and occupancy of the same; that by the terms of the Dryer lease it was agreed that the lessee should surrender the possession thereof at the expiration of the term in as good condition as when taken, reasonable use and wear and damage by the elements excepted. The Dryer lease is set out in the answer, and it appears to be an absolute lease of the premises for the term of one year, with certain conditions not necessary to be more particularly mentioned. Defendants further allege that, by reason of the acceptance of the surrender, and by plaintiffs entering into

the said contract of lease, defendants have no longer any estate in said lands, and are discharged from the payment of rent. They further allege that plaintiffs are estopped from recovering the rental sued for. To this part of the answer paintiff demurred, for the reason that it appears that the renting of the land to Dryer was after the commencement of this suit, and constituted no defense to plaintiff's action. This demurrer was overruled and error is assigned upon the ruling. Appellants rely upon the case of *Martin v. Stearns,* 52 Iowa, 345. In that case the fact that the plaintiff at the time of the alleged surrender had brought his action to secure the payment of the rent yet to accrue was held of controlling importance in solving the question as to whether or not there had been a mutual agreement of surrender. The sufficiency of the pleading tendering the issue was in no way involved. The sole question decided was one of fact, and it was held there was no mutual agreement. The question here is one of pleading, and we think the answer set forth fact which, if unexplained, would amount, not only to a surrender by agreement of the parties, but also to a surrender by operation of law. Surrender by agreement of the parties is well defined in the *Martin Case.* It is there said to be "a yielding up of an estate to the landlord, so that the leasehold interest becomes extinct by mutual agreement between the parties." It is further said that this agreement may be implied from the acts and conduct of the parties. Surrender by operation of law is said to exist when the owner of a particular estate has been a party to some act having some other object than that of a surrender, but which object cannot be effected while the particular estate continues, and the validity of which act he is by law estopped from disputing. Such surrender is said to be the act of the law, and takes place independently of, and even in spite of, the intention of the parties. It is presumed to have preceded the act to which the tenant is a party. See Wood Landlord & Tenant, section 496, and cases cited. Manifestly the answer set forth a surrender, both by agreement and by operation of law.

III. In reply to this answer, plaintiffs admit that they received notice from defendants of their intention to abandon the premises, and they further allege that they immediatly notified them that they would hold them responsible for the rent accruing under their lease.` They also say that they then commenced this action, and sued out the writ of attachment heretofore mentioned. Yet further, they allege that, notwithstanding the premises, defendants vacated the property, and that plaintiffs, after doing the things aforesaid, rented the property to Dryer for the term of one year, and notified defendants of their intention to hold them for the rent; and that they entered upon the premises, and re-rented the same, for the purpose of protecting their reversionary interest, and to reduce the damages which the defendants might otherwise be compelled to pay; that defendants never objected to this arrangement, and that there was no intention on the part of plaintiffs to release the defendants from their obligation; that the property was extensive, the buildings considerable, and that it was absolutely necessary for some one to be in possession of the property in order to protect it from waste. To this reply appellees filed a demurrer based upon the grounds that the facts recited showed an acceptance of the surrender pleaded by the defendants, and also affirmatively disclosed an acceptance by operation of law. This demurrer was sustained, and the error assigned upon the rulings presents the last question in the case. The *Martin-Stearns Case,* to which we have already referred, clearly determines that the facts pleaded in reply negative the idea of a mutual surrender, and we need not say more on this point than to refer to that case. Whether or not there was a surrender by operation of law is a question of more difficulty, and to this we will now turn our attention. The pivotal point in the inquiry is this: May a landlord, after his tenant has vacated and abandoned the premises without cause, resume possession thereof, and re-lease the same to another, after giving notice to the original tenant of his intention of

holding him for the rents reserved, and that he had resumed possession for the purpose of protecting the reversion, and had re-let them to reduce the damages which he might otherwise sustain, without being held to have created a surrender by operation of law. We do not wish to depart from the definition of "surrender" heretofore given, and may here reiterate that a surrender often takes place by operation of law, contrary to the intent of the parties; and the general rule no doubt is that, if the tenant abandons the premises and the landlord re-rents them, a surrender is established. *Stobie v. Dills,* 62 Ill. 432. But nearly every general rule has its exceptions, and one of the exceptions to the rule just quoted is that if the landlord re-leases them for and on account of the tenant a surrender is not to be inferred. *Allen v. Saunders,* 6 Neb. 436. See *Stewart v. Sprague,* — Mich. — (38 N. W. Rep. 673); *Bloomer v. Merrill,* 1 Daly, 485; *Scott v. Beecher,* 91 Mich. 590 (52 N. W. Rep. 20); *Meyer v. Smith,* 33 Ark. 627; *Auer v. Penn,* 99 Pa. St. 375 (44 Am. Rep. 114); *Langsdorf v. Le Gardeur,* 27 La. Ann. 364; *Ogden v. Rowe,* 3 E. D. Smith, 312; *Morgan v. Smith,* 70 N. Y. 537; *Underhill v. Collins,* 132 N. Y. App. 269 (30 N. E. Rep. 576). This proposition seems to be stated in the case of *Martin v. Stearns, supra.* Again, it is held that the landlord may accept the keys to the premises, and enter upon them for the purpose of making repairs, without being held to a surrender. *Livermore v. Eddy,* 33 Mo. 547; *Hanham v. Sherman,* 114 Mass. 19; *Withers v. Larrabee,* 48 Me. 570; *Breuckmann v. Twibill,* 89 Pa. St. 58. While there are some authorities which seem to announce a contrary doctrine, they do not appear to us to be sound. It was the duty of the appellants to take such possession of the premises after their abandonment by appellees as was necessary to protect their estate from waste and depreciation in value; and they had their election to accept the surrender, or to do such acts as would amount to a surrender, or to hold the appellees to their contract. If they gave appel-

lees notice that they intended to hold them for the rent, and re-rented simply to reduce the damages,—and this is made to appear by satisfactory evidence,—there is no reason for holding that there was a surrender, and that the original tenants were released from their obligation. The demurrer to the reply should have been overruled. On defendant's appeal, the judgment is AFFIRMED. On plaintiffs' appeal, it is REVERSED.

WATERMAN, J., taking no part.