SIMON MATHIASEN et al., appellants, v. STATE CONSERVATION
COMMISSION, STATE OF IOWA and members of IOWA STATE
EXECUTIVE COUNCIL, appellees.

No. 48715.

(Reported in 70 N.W.2d 158)

MAY 3, 1955.

Leland C. White, of Harlan, and Edward S. White, of Carroll, for appellants.

Dayton W. Countryman, Attorney General, and Kent Emery, Assistant Attorney General, of Des Moines, for appellees.

SMITH, J.—The petition was originally in two divisions, the first praying for a declaratory judgment and injunction, the second, in certiorari. Both sought to prevent condemnation of plaintiffs' land by defendants for the construction of an artificial lake and state park in consummation of what is referred to as the Shelby County Lake project.

The first division of the petition was later dismissed. The court then, on defendants' motion, transferred the case to the law side and on trial dismissed plaintiffs' petition. Plaintiffs appeal.

We shall discuss the legal propositions involved without particular recitation or summary of the long and detailed pleadings. The actual facts are not in dispute.

I.  Plaintiffs argue that the two appropriation bills, from

the proceeds of which defendants propose to pay the cost of the project, are chapter 29 of the Laws of the Fifty-second General Assembly (1947) and chapter 14 of the Laws of the Fifty-third General Assembly (1949). Each Act provides that the funds appropriated may not be expended without approval of the "Joint Legislative Committee on Retrenchment and Reform."

This committee, under the provisions of chapter 44 of the Laws of the Fifty-fourth General Assembly (1951) has been succeeded by, or renamed, the "Budget and Financial Control Committee." Plaintiffs seem to question (but do not expressly argue the point) whether the latter Act accomplished a legal substitution of the later committee for the former one, as the proper body to approve expenditure of the funds provided by the two appropriation bills.

Defendants in effect reply that the appropriations were subject to approval of the *joint legislative interim* committee "then known as the committee on retrenchment and reform" and that since the 1951 legislative session (Fifty-fourth General Assembly) the interim committee has been designated "the budget and financial control committee."

The functions of the Joint Legislative Committee on Retrenchment and Reform were not materially different from those of its successor. We think the change of name indicated no intention of withdrawing the appropriations made by the Fifty-second and Fifty-third General Assemblies, or of rendering them unavailable for the purposes specified in the appropriation Acts. Section 14 of the 1951 Act expressly provides: "Wherever reference is made in the statutes * * * to the committee on retrenchment and reform, it is the intention * * * to strike such reference and insert in lieu thereof reference to the budget and financial control committee." This language seems sufficient to effect the substitution of the control over the appropriations to the present "interim" committee—the Budget and Financial Control Committee.

II. In 1952 the "interim committee" approved or authorized the release of $378,000 for the Shelby County project, but, as plaintiffs point out, it failed to state an express determination that the expenditure was for the best interests of the state.

Each appropriation Act contains the provision that the funds appropriated "shall not be expended until it shall be determined by the conservation commission with approval of the joint legislative committee on retrenchment and reform that its expenditures shall be for the best interests of the state."

The committee provided however that no contract for construction of the lake could be let until the owners of 60% of the land in the watershed had signed up with the Soil Conservation Service for soil conservation practices.

No argument by plaintiffs is based on the failure of the Commission to state expressly that the project was for the best interests of the state. Certainly we may assume, in absence of a contrary showing that both the Commission and the Committee obeyed the mandate of the statutes under which they were acting even though no such finding is expressly stated. The omission is not serious — certainly not fatal.

But it is argued that under the Committee's authorization condemnation proceedings cannot be undertaken before the owners of 60% of the land in the watershed have signed up for soil conservation practices. This contention overlooks the precise language of the condition imposed by the interim committee: "* * * provided that the *contract for construction* may not be let until 60% * * *."

This proviso places a limitation upon defendant Commission's power to draw upon the appropriation until the 60% condition is met. It is stipulated that only 53.4% of the landowners have thus far signed. But the limitation is not upon the right or power to institute condemnation proceedings.

Plaintiffs' lands of course cannot be *taken* without "just compensation." Final decision to go forward with the project must naturally await some determination of the damages to be awarded plaintiffs. It is conceivable the cost of the project may exceed what is deemed reasonable. Not infrequently, a condemning body concludes the cost is going to be prohibitive and for that or some other reason abandons the project. In such case the property owner is not damaged. The condemnation procedure would be governed by chapter 472, Iowa Code, 1954. No

land is actually *taken* until compensation is made, or made certain.

■ III. It is further contended defendants have no power to condemn in this case "because the construction of an artificial lake is not the taking of land for a public park."

This argument is factually based on the frank admission of the Iowa State Conservation Director, Mr. Stiles, who was called to the witness chair by plaintiffs:

"This project primarily and fundamentally involves the construction of an artificial lake and neither the commission nor anyone has contemplated the establishment of a park in this area without an artificial lake. The area sought to be taken would not, in the absence of an artificial lake, particularly lend itself to a State Park as State Parks are generally maintained."

Plaintiffs' argument throughout assumes the project is for the sole purpose of constructing the lake and not properly brought or proposed under section 111.7, Iowa Code, 1950 (now 1954), which only authorizes condemnation for public parks.

■ The point is not well taken. Undoubtedly many, perhaps most, public parks are located with reference to some picturesque or otherwise distinctive natural characteristic of the landscape. But any site selected requires some artificial embellishment. The selection of proper sites is within the sound discretion of the bodies authorized by the legislature for that purpose. Section 111.7, Iowa Code, 1950. The right of the legislature to delegate such power cannot be doubted.

We have said: "The exact line of demarcation between legislative power and administrative duties, in some cases, is not easily determinable. It may be stated in a general way that it is for the legislature to determine what the law shall be, to create rights and duties and provide a rule of conduct. This does not necessarily mean that the legislature must lay down a strict rule that must be followed by an administrative officer; but that an executive or commission may be vested by the legislative branch of the government with discretion, within certain limits, in carrying out the provisions of a statute." McLeland v. Marshall County, 199 Iowa 1232, 1238, 201 N.W. 401, 403, 203 N.W. 1. See also 16 C. J. S., Constitutional Law, section 138. We think

the matter of establishment of state parks comes within the purview of this doctrine. See section 111.3, Code of Iowa, 1954.

The courts cannot control that discretion nor pass on the propriety of its exercise in absence of some showing of bad faith. The Council acts upon the recommendation of the Conservation Commission. Code section 111.7, supra. We cannot assume the lands proposed to be acquired are to be fully covered with water with none of the other facilities usually accompanying the establishment of public parks designed to make possible recreational use and enjoyment by the public. The fact that the lake will be artificial rather than natural presents no legal difficulty to the acquisition of the site.

Defendants in argument refer to section 107.24, Iowa Code, 1950 (now 1954), which authorizes the Conservation Commission, in its own right, to acquire and provide sites for public hunting, fishing and trapping and kindred purposes.

But we have no difficulty in upholding the project as one for a public park and under Code section 111.7. There is no occasion for determining its status under Code section 107.24.

We have considered all the various propositions urged by plaintiffs on appeal and find no reversible error. The decision of the trial court is accordingly affirmed.—Affirmed.

. All JUSTICES concur.