DONALD L. HAWBAKER et al., plaintiffs-appellees, v. IOWA STATE HIGHWAY COMMISSION, defendant-appellant, RALPH L. JESTER et ux., defendants-appellees.

No. 50521.

574

FEBRUARY 6, 1962.

Evan L. Hultman, Attorney General, C. J. Lyman, Special Assistant Attorney General, and Don C. Swanson, of Des Moines, for defendant-appellant, Iowa State Highway Commission.

Kalman Musin, of Des Moines, for plaintiffs-appellees.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, for defendants-appellees.

THOMPSON, J.—The plaintiffs during the early months of 1959, and until about the middle of June of that year, occupied certain premises in the City of Des Moines under lease from

the defendant Ralph L. Jester, the fee owner. This occupancy was under a written lease, originally running from February 1, 1956, to January 31, 1959. It had been renewed to expire on January 31, 1962. It was not acknowledged, but was filed for record on September 30, 1959. At sometime during the month of May 1959, or perhaps even earlier, it became known that the property was in the path of a freeway to be constructed by the Iowa State Highway Commission, and negotiations were begun with Jester looking to its purchase. An agent of the Commission also called on the plaintiffs during May and made them an offer of $300 for their leasehold rights. This was not accepted. The offer was renewed in a letter from the Commission to the plaintiffs under date of June 18, 1959, but again was not accepted. This letter contained a statement that it would be necessary to begin condemnation proceedings at an unspecified date, and the matter was being handed to the legal department for action. At this time the plaintiffs had leased another property and had either removed to it or were in the process of moving.

The last rent paid was on May 22, 1959, for the month of June; and the record shows the plaintiffs had removed at least by June 22. They returned the key to the premises to Jester on July 1; and on that date had no property remaining in the building. On August 31 next Jester wrote them at their new location, saying it had cost $48 to clean up the premises, and further saying: "I think you offered to pay half the cost. * * * If you are still agreeable, you can send me a check for $24, and we will call things square." Pursuant to this, plaintiffs paid Jester the requested sum of $24; and, presumably, things were considered "square".

No condemnation proceeding was ever instituted. On September 2, 1959, the Commission purchased the realty from Jester by written contract. At that time the record shows no knowledge by the Commission of the lease extension to January 31, 1962, and there was no tenant in occupancy and no recording to give constructive notice. The plaintiffs claim, however, that they still had rights as tenants; that they had merely bowed to necessity in leasing other premises; and they think the Commission should be compelled, through a writ of man-

damus, to condemn their interest and make such payment as may be found due. The Commission, having as it contends bought the property from Jester with warranties against encumbrances and without notice of any existing leasehold rights, moved to bring in its grantor, the Jesters, husband and wife, so that all issues might be determined in one action. They were accordingly brought in; but at the close of the trial the court dismissed them as defendants. The court then entered its judgment ordering the writ of mandamus to issue as prayed by the plaintiffs.

I. Errors assigned by the defendant Commission include the contentions that the plaintiffs have failed to show they will suffer damage if the writ does not issue, and that they had abandoned the property and surrendered their lease before it was taken. We find it necessary to discuss only these assignments.

Chapter 661 of the present Code governs actions in mandamus. Section 661.9 is quoted: "Petition. The plaintiff in such action shall state his claim, and shall also state facts sufficient to constitute a cause for such claim, and shall also set forth that the plaintiff, if a private individual, is personally interested therein, and that he sustains and may sustain damage by the nonperformance of such duty, and that performance thereof has been demanded by him, and refused or neglected, and shall pray an order of mandamus commanding the defendant to fulfill such duty."

It will be observed that this section requires the plaintiff to plead "that he sustains and may sustain damage by the nonperformance of such duty." One who has the burden of pleading an issue also has the burden of proving it. In re Estate of Kneebs, 246 Iowa 1053, 1057, 70 N.W.2d 539, 542; In re Estate of Ewing, 234 Iowa 950, 955, 14 N.W.2d 633, 635. So in a mandamus action the burden is upon the plaintiff to plead and prove that he will suffer damage if the writ does not issue. In Nissen v. International Brotherhood etc., A. F. of L., 229 Iowa 1028, 1051, 1052, 295 N.W. 858, 871, 141 A. L. R. 598, we quoted with approval and at length from Mystic Milling Co. v. Chicago, M. & St. P. Ry. Co., 132 F. 289, 293. After stating the essentials

of the action of mandamus under the Iowa Code, among which is "(3) a legal right in the plaintiff to damages because of such nonperformance", the quotation from the opinion in the Mystic Milling case says: " 'The right to damages, then, is essential to enable the plaintiff to maintain the action. The reason is apparent, for, if he has suffered no damage, or will not suffer any, he can have no interest (as a private individual) in the performance of the duty.' " See also 55 C. J. S., Mandamus, section 55, page 96; Ault v. Council of City of San Rafael, 17 Cal.2d 415, 110 P.2d 379, 380; Friedland v. Superior Court of Sacramento County, 67 Cal. App.2d 619, 155 P.2d 90, 94; Thomasson v. Jones, 68 Cal. App.2d 640, 157 P.2d 655, 656.

The Commission contends that the plaintiffs have failed to show they will suffer any damage if the writ does not issue in the case at bar. The record is, in fact, barren of any proof of the value of the lease which they seek to require the defendant Commission to condemn. It is without doubt true that a leasehold interest is such a right as that its taking by eminent domain requires compensation. It is also true, as the plaintiffs urge, that their rights could not be obliterated by an agreement between the property owner, Jester, and the Commission.

But the burden was still upon them to prove, as they pleaded, that they will suffer damage if the Commission is not required to condemn their alleged leasehold and compensate them for it. We are inclined to agree with the trial court in its remark at the close of the evidence, that "while the petition in this case asks not only for an order of mandamus but for damages, there has been nothing shown here in the record to sustain any claim for damages * * *." The defendants urge that for all the record shows the leasehold claimed by the plaintiffs may have been an onerous burden rather than a valuable asset.

II. But we think the defect in plaintiffs' case goes deeper than a mere failure to show damages, although such failure may appear. The record is that they had surrendered their lease some months before the Commission purchased the property from the fee title owner, Jester. They had paid rent at most only through June; they had removed from the premises during June; they had returned the key to Jester, their lessor,

on July 1. No rent was tendered and none demanded after the payment on May 22, which we assume, although the record is not entirely clear, was for the month of June. The plaintiff Hawbaker testified "Mr. Jester has never made any attempt to hold us to our lease." After the plaintiffs removed from the building, Jester had it cleaned, and, apparently in accordance with some previous understanding, asked the plaintiffs, by letter of August 31, 1959, to pay one half of the total cost of $48. He said: "If you are still agreeable, you can send me a check for $24, and we will call things square." Hawbaker testified that the plaintiffs paid the amount requested. So they "called things square."

No possible conclusion can be reached from the foregoing facts but that the plaintiffs elected to abandon their lease, and, with the consent of their lessor, it was surrendered and all rights under it terminated. This was some time before the property was taken over by the defendant Commission. On September 2, 1959, when it was purchased from Jester, there was no tenant in possession and no recorded lease. There was then nothing to give the buyer any notice of plaintiffs' claim. It is true that on June 18 the Commission had written the plaintiffs, offering $300 for their leasehold interest and advising that condemnation proceedings would shortly be begun. But at this time the plaintiffs had already decided to remove from the premises. They had heard of the contemplated taking of the property for a public use, but no formal notice of condemnation was ever served on them.

■ A thorough discussion of what constitutes surrender and acceptance of surrender of leased premises is found in Ballenger v. Kahl, 247 Iowa 721, 724–726 inclusive, 76 N.W.2d 196, 198, 199. In Martin v. Stearns, 52 Iowa 345, 347, 3 N.W. 92, 93, is this statement, approved in Ballenger v. Kahl, supra: "A surrender, as the term is used in the law of landlord and tenant, is the yielding up of the estate to the landlord so that the leasehold interest becomes extinct by mutual agreement between the parties." The application of this definition to the case at bar is clear. They "called it square."

██ The trial court was of the apparent opinion that because there was an intent on the part of the Commission to take the property which the plaintiffs were occupying at some future time they were justified in removing while still retaining their leasehold rights. With this we do not agree. We said in Mathiasen v. State Conservation Commission, 246 Iowa 905, 908, 70 N.W.2d 158, 160: "Not infrequently, a condemning body concludes the cost is going to be prohibitive and for that or some other reason abandons the project. In such case the property owner is not damaged." This means that the property owner is not damaged until his property is actually taken. It is true he may be put in a difficult position when it becomes apparent there is danger his property may be taken and he does not wish to wait until the final minute to make arrangements for another place to live, or to conduct his business. But it must be remembered he will be compensated in damages for whatever loss he suffers. Under such circumstances he may await the actual taking and collect fair compensation; or, if he have only a leasehold right as did the plaintiffs in the case at bar, he may elect whether it is better for him to surrender his lease, if his lessor will consent, and obtain another place to conduct his business. But if he elects the latter alternative and removes before the actual taking, he will have no claim against the taker. His leasehold will have been lost by the surrender.

We determined this question adversely to plaintiffs' contention in Gaar v. Iowa State Highway Commission, 252 Iowa 1374, 1378, 110 N.W.2d 558, 560. That case involved chapter 318, section 3 of the Acts of the Fifty-eighth General Assembly, which amended section 472.14 of the Code of 1958 by adding thereto a provision requiring payment for personal property located in realty taken by the Commission "which is damaged or destroyed or reduced in value." The condemned real estate in the Gaar case was two apartment buildings containing some forty furnished apartments. Before the taking by the Commission, the personalty had been entirely removed. We held that at the time of the taking there was no personal property which came within the meaning of the statute. We said: "Is an owner of an apartment building, later taken by condemnation for a

public purpose, who, in reasonable anticipation of such proceedings, but prior to any taking, sells or removes all the furnishings therefrom, entitled to have damages assessed for loss in value to such personal property * * *? Our answer is no."

We see no distinction between an owner, or a tenant, who removes personal property from a building before the taking, and a tenant who surrenders his lease under the same circumstances. We conclude the plaintiffs have failed to show any right to a writ of mandamus. Their lease was surrendered some months before there was any taking by the Commission, and then was no longer in existence.

III. In view of our holding on the issues as between the plaintiffs and the Commission, the question whether the defendants Jester should have been dismissed from the action becomes moot. Plaintiffs having no cause of action against the Commission, the Commission of course has no action over against Jesters.

The cause is reversed as to the plaintiffs' action against the Commission, with directions to enter a decree and judgment dismissing the plaintiffs' petition. Costs will be taxed against the plaintiffs.—Reversed on the issues between the plaintiffs and the Iowa State Highway Commission; affirmed as to the defendants Jesters.

All JUSTICES concur except LARSON, J., who dissents, and BLISS, J., who takes no part.

LARSON, J. (dissenting)—I respectfully dissent, for I feel the majority fail to consider the obvious injustice done plaintiffs by the Iowa State Highway Commission. We cannot escape the fact it did recognize the plaintiffs' leasehold interest in that property. It could not and did not make them an offer of $300 damages upon any other basis. It cannot deny that plaintiffs left the premises under threats of forceful evacuation by the Commission's agents. It cannot deny what everyone including the court knows, that with zoning restrictions in such a city it is not possible or feasible to await the bulldozer before seeking another suitable location for a store. That plaintiffs now should be penalized for an honest effort to mitigate their damages by promptly finding another location is unthinkable.

Regardless of the technical justification for denying plaintiffs relief, I feel the refusal of the Iowa State Highway Commission, as an arm of the State, to adequately compensate the plaintiffs, or to submit the matter of damages to a jury, as a result of this actual taking of a property interest, must be vigorously condemned. Well-known provisions in our Constitution and in our statutes are designed to protect property owners from such treatment, and we should aid that purpose in this case.