RAY VAN BUSKIRK, WARREN VAN BUSKIRK and RICHARD COOK, d/b/a VAN BUSKIRK CONSTRUCTION COMPANY, appellees, v. IOWA STATE HIGHWAY COMMISSION (members), appellants.

No. 50991.

(Reported in 122 N.W.2d 351)

Appeal from Woodbury District Court—LAWRENCE W. McCOR-
MICK, Judge.

JUNE 11, 1963.

Evan Hultman, Attorney General, C. J. Lyman, Special
Assistant Attorney General and Counsel to Iowa State Highway
Commission, A. Jackson Allen, State Counsel, Iowa State High-
way Commission, and Gill & Dunkle, of Sioux City, for appel-
lants.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, of Sioux City,
for appellees.

MOORE, J.—On December 28, 1959, plaintiffs entered into a
written contract with the Iowa State Highway Commission for
certain shouldering and incidental paving work on U. S. High-
way 75 in Plymouth County. Plaintiffs' petition alleges they
performed the work in accordance with the contract, the com-
mission demanded they roll the shoulders in a manner not re-
quired by the contract or specifications, they did said work after
giving the required notice of their intention to make claim for
extra compensation, the commission rejected their claim of
$3114.64 and their request for arbitration, and prays that a writ
of mandamus issue compelling defendants to name an arbiter to

act under the provisions of the contract. Defendants' special appearance was overruled as was their motion to dismiss. After trial the court granted the writ.

Defendants on this appeal assert the trial court erred in overruling, (1) their special appearance, (2) their motion to dismiss, (3) in ruling upon certain testimony, (4) in finding plaintiffs' claim was proper for arbitration and within the jurisdiction of an arbitration board under the terms of the contract.

We find it necessary to discuss only the last assignment. The propositions raised therein require a reversal and are decisive of the case.

Plaintiffs' evidence consists of stipulated facts and exhibits received without objection. In addition to certain exhibits defendants offered the testimony of two employees, a district urban engineer and a highway engineer. The contract entered into by the parties by reference includes the 1956 Standard Specifications for Construction on Primary, Farm-to-Market and Secondary Roads and the plans and specifications for the project of widening the pavement to give a 10-foot creeper lane. The first item in the contract is "Class 10 excav., rdwy. & borrow" at a price of $36,050.08. The term is not defined. Its meaning creates one of the real disputes between the parties.

Section 1109.12 of the Standard Specifications provides:

"1109.12 Disputed Claims for Extra Compensation. In any case where the contractor deems that extra compensation is due him for work or material not clearly covered in his contract and not ordered by the engineer as an extra as defined herein, the contractor shall notify the engineer in writing of his intention to make claim for such extra compensation before he begins the work on which he bases the claim. * * * The claim must be passed upon by the contracting authority. In case the claim is found to be just, it shall be allowed and paid."

Section 1109.13 provides:

"1109.13 Arbitration. The contractor shall not institute any proceedings at law to secure payment for labor performed, or materials furnished, or both, under this contract until the

claim therefor shall have been rejected by the contracting authority and submitted to a board of arbitration, as hereinafter provided.

"The contractor may at any time within sixty days after the contracting authority's acceptance of the work for which he claims to have furnished material or performed labor, serve a written demand upon the contracting authority to submit his claim, or claims, to a board of arbitration, as herein provided. Said board of arbitration shall consist of three persons: one to be chosen by the contracting authority, one by the contractor, and the third by the two arbitrators thus chosen. * * *

"The said board of arbitration shall have jurisdiction to pass upon questions involving compensation to the contractor for work actually performed or material furnished, and claims for extra compensation which for any reason have not been allowed by the contracting authority. *The jurisdiction of the board of arbitration shall not extend to an interpretation of the intent of the plans and specifications,* nor to a determination of the quality of workmanship or materials furnished, nor to setting aside or modifying the terms or requirements of the contract." (Emphasis ours.)

The parties stipulated defendants demanded plaintiffs roll the shoulders of said project in a manner required by sections 2106.01 through 2106.04 and not required by sections 2110.01 and 2110.02 of the Standard Specifications; plaintiffs notified the resident engineer of their intention to make claim for extra compensation in the manner provided by section 1109.12; plaintiffs performed the rolling of the shoulders as required by the engineer; thereafter filed a $3114.64 claim for said work; defendants denied the claim; plaintiffs followed the procedure for arbitration specified in section 1109.13 and defendants denied plaintiffs' demand for arbitration. In other words plaintiffs contend they were not obligated to roll the shoulders under the contract while defendants assert they were so required. A study of the contract, including the Standard Specifications sections above referred to, fails to indicate a clear answer to their differences.

James J. Klimak, defendants' district urban engineer, testi-

fied he required plaintiffs to proceed in accordance with section 2106 because it was covered by the plans and specifications. He stated that during his thirteen years as a resident engineer all contractors in performing Class 10 excavation always included compaction of embankments with this one exception by plaintiffs.

W. W. Wickham, a highway engineer and employee of the Highway Commission for thirty-two years, testified:

"I have observed that contractors ordinarily treat the item of Class 10 excavation as including the terms and compaction of the embankments. This was set forth in the Specifications. They regard it as being part of the Class 10 excavation. I know of no other case than the case at hand where there have been exceptions and I take it that is why we are in court now. I know of no other case where the contractor contended that he did not have to roll the embankment at all. Anything of a controversial nature which can't be settled by the field force comes to the central office. This is the only incident where a contractor has contended it is not required to roll the banks at all."

 This is a mandamus action triable in equity and is reviewable here de novo. Code section 661.3; rule 334, R. C. P. The burden of proof is on the plaintiffs. Collins v. Iowa Liquor Control Comm., 252 Iowa 1359, 1366, 110 N.W.2d 548, 552, and citations.

Chapter 661 of the Code governs actions in mandamus.

Section 661.1 provides: "Definition. The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation, or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station."

Section 661.6 provides: " 'Enforceable duty' defined. If such duty, the performance of which is sought to be compelled, is not one resulting from an office, trust, or station, it must be one for the breach of which a legal right to damages is already complete at the commencement of the action, and must also be a duty of which a court of equity would enforce the performance."

Section 661.9 provides: "Petition. The plaintiff in such action shall state his claim, and shall also state facts sufficient

to constitute a cause for such claim, and shall also set forth that the plaintiff, if a private individual, is personally interested therein, and that he sustains and may sustain damage by the nonperformance of such duty, and that performance thereof has been demanded by him, and refused or neglected, and shall pray an order of mandamus commanding the defendant to fulfill such duty." ·

In Nissen v. International Brotherhood etc. A. F. of L., 229 Iowa 1028, 1051, 1052, 295 N.W. 858, 871, 141 A. L. R. 598, and also Hawbaker v. Iowa State Highway Comm., 253 Iowa 573, 577, 113 N.W.2d 296, 298, we quote with approval from Mystic Milling Co. v. Chicago, M. & St. P. Ry. Co., D. C. Iowa, 132 F. 289, 293, where the court construed an action of mandamus under the Iowa Code and said:

"Essentials of the action of mandamus under the Code are: (1) A duty enjoined·by law upon the defendant, in the performance of which the plaintiff, if a private individual, has a personal interest; (2) a breach or· nonperformance by the defendant of such duty; (3) a legal right in the plaintiff to damages because of such nonperformance; (4) absence of any other adequate remedy in the ordinary course of the law."

55 C. J. S., Mandamus, section 56, pages 97, 98, states the general rule as follows:

"Except where special statutory provisions have·changed the rule, the use of mandamus is limited to the enforcement of rights and duties imposed by law, * * * if the right or duty rests wholly on contract, the writ will not issue to enforce it, even though its performance necessarily devolves on a public officer, since legal and equitable remedies afford adequate relief. The rule is especially applicable where the existence of the contract which forms the basis of a mandatory action is in dispute, or of doubtful validity, *or where the demand under the contract is not clear and explicit*; or where the circumstances are such that specific performance of the contract would not be decreed; * * *." (Emphasis ours.)

Thus it appears from the statutes, the decisions and the

general rule above quoted plaintiffs had the burden of proving, among other things, a duty on defendants to appoint an arbiter to serve on a board to consider plaintiffs' disputed claim. Their proof not only fails but the record clearly establishes the controversy involves "an interpretation of the intent of the plans and specifications" over which by the terms of the contract a board of arbitration has no jurisdiction. It is not a dispute within the class requiring arbitration under section 1109.13 of the Standard Specifications. To order defendants to appoint an arbiter would only result in a meeting of the board and a finding it had no jurisdiction. It would be useless procedure which equity will not require. It is difficult to understand how plaintiffs have or may sustain damage by nonperformance of the claimed duty. Such proof is required by Code section 661.9. See also Hawbaker v. Iowa State Highway Comm., 253 Iowa 573, 113 N.W.2d 296.

Plaintiffs argue that by the provisions of the first paragraph of section 1109.13, Standard Specifications, arbitration is a condition precedent to the bringing of any action at law. Their contention is without merit. The condition is specifically limited to arbitration "as hereinafter provided". As we have stated, plaintiffs' claim is not within the class for which arbitration is provided.

What we have said is decisive of the appeal. We hold the writ must be denied. Defendants' other contentions need not be discussed or decided.—Reversed.

All JUSTICES concur.