# ALFRED D. ALDRICH v. SHOE MART COMPANY.[1]

May 14, 1909.

Nos. 15,976—(9).

**Surrender of Lease — Evidence.**
    Appellant went into possession as sublessee for a term of years of a cer-

[1]Reported in 121 N. W. 422.

tain portion of a building, which had been leased for a longer term of years by the owner to appellant's lessor. Both leases provided that if the premises, or any portion thereof, should be used for any other purpose than as stated in the leases, or if any portion should be sublet without the consent of the lessors, then the lessors were authorized to cancel the leases, re-enter, and take possession without notice. Appellant's lease provided that the premises occupied by him were leased for a specific purpose, and that the lease did not take effect until approved and consented to by the owner. Appellant remained in possession for nearly one year, when he claims to have been evicted by respondent, a subsequent lessee of the building, and this action was brought to recover damages therefor.

*Held*, there was evidence reasonably tending to prove that the provisions above stated, in both the appellant's and the original lease, were waived, and the relation of landlord and tenant became established as between appellant and his immediate lessor; that the evidence is not sufficient to prove that appellant's lessor defaulted in the terms of his lease, and that the owner declared a default, re-entered, and resumed possession. On the contrary, the evidence reasonably tends to prove that such lessee surrendered his lease and possession of the building to the owner, that the owner resumed possession with full knowledge of the rights of appellant, and that respondent had full knowledge of the rights of appellant, and leased the building subject thereto.

**Error to Direct Verdict.**

The evidence is sufficient to make a prima facie case that, upon the surrender of the building by appellant's lessor, respondent took possession and evicted appellant from the premises. It was error for the trial court to direct a verdict for respondent.

Action in the district court for Hennepin county to recover $5,150 damages for interference with plaintiff's rights as tenant. The case was tried before Frederick V. Brown, J., who directed a verdict in favor of defendant. From an order denying plaintiff's motion for a new trial, he appealed. Reversed.

*C. H. Rossman* and *Hall & Kolliner,* for appellant.
*Kerr & Fowler,* for respondent.

LEWIS, J.

Appellant brought this action to recover damages for being evicted from certain premises which he claimed to be occupying as a sublessee of a part of the third floor of a five-story building in the city of Minneapolis. At the close of plaintiff's testimony the court instructed the jury to return a verdict in favor of the defendant, and

the correctness of that order depends upon whether there was any evidence before the court reasonably tending to support the allegations of the complaint.

The complaint states that the Philipsborn Company were either the owners in fee, or the owners of a leasehold estate, of the five-story building known as No. 625 Nicollet avenue, Minneapolis, and leased the premises to a firm known as Pickering & Pinska for a term of years; that on the eleventh of August, 1906, Pickering & Pinska sublet a part of the third floor to appellant for two and one half years for the sum of $50 per month, payable in advance each month, for the purpose of carrying on the business of hairdressing and manicuring, with the privilege of renewal for the same length of time; that the lessors agreed to furnish heat, light, and janitor service, and that at the time of the execution of the lease the premises were equipped with gas, electric light, and water; that soon after August 11, 1906, Mr. Pickering, owing to financial embarrassment, transferred all his property to one Jordan, as trustee, and during the subsequent time mentioned in the complaint, the trustee, together with Mr. Pinska, controlled and held possession of the premises under the lease; and that appellant, with the knowledge and consent of the trustee, Pickering & Pinska, and the Philipsborn Company, paid the rentals in the general office of the building in the same manner that he had done before the trustee was appointed.

The complaint then alleges that during the month of June or July, 1907, an arrangement was made between the Philipsborn Company and respondent whereby the lease running to Pickering & Pinska was transferred and assigned to respondent company, or was absorbed and merged, by cancellation or otherwise, and a new lease to the premises executed by the Philipsborn Company to respondent. It is alleged that respondent company had actual as well as constructive knowledge of the rights of appellant as a sublessee, that respondent took possession of the building under its lease on or about the first of August, 1907, and, disregarding the rights of appellant, caused the lights to be cut off, the water to be disconnected, the elevator to stop running, and so interfered with access to the rooms that it became impossible to conduct his business therein, and by reason whereof he

was forcibly compelled to surrender possession of the leased premises on or about the eleventh day of August, 1907.

The answer admitted that Pickering & Pinska held a lease of the building from the Philipsborn Company, and alleged that by the provisions thereof it was agreed that, should the lessees assign or underlet the premises, or any portion thereof, without the written consent of the lessors, then and thereupon the lease should become null and void and of no effect, and said lessors should have the right to immediate re-entry and possession of the premises. The answer states that Pickering & Pinska, without the consent of the lessor, did sublet a portion of the premises, and did assign the same, and that Mr. Pickering, without the consent of the Philipsborn Company, did assign all his right, title, and interest in and to the lease on or about the first of June, 1907, and that by reason of the default and doings of Pickering & Pinska in so subletting and so assigning the lease the Philipsborn Company did on or about the first day of June, 1907, declare the lease to be defaulted, and did take possession of the premises; that Pickering & Pinska surrendered and delivered up possession of the same to the Philipsborn Company; that appellant was in possession of a portion of the third floor, and that he claimed to be in possession under and by virtue of the lease, dated August 11, 1906, executed by Pickering & Pinska; that on or about the eighteenth of June, 1907, after default had been declared against Pickering & Pinska, the Philipsborn Company leased the premises to respondent, and, if appellant did at any time occupy any portion of the premises, such occupancy was unlawful and contrary to the terms of his lease; that he did not conduct the business in accordance with the terms of the lease; and that prior to the eighteenth of June, 1907, he assigned the lease and sublet the premises, without the knowledge and consent of Pickering & Pinska, and denied that he had any right, title, or interest in the premises as the lessee of Pickering & Pinska.

The following facts appear from the evidence: The lease under which Pickering & Pinska went into possession was executed on July 2, 1906. The term was for the period of ten years, and the lease expressly provided that the premises were to be used "for the sale of dry goods, millinery, cloaks, suits, ladies', misses', and chil-

dren's furnishings and wearing apparel of every kind and description, and for no other purpose." The rental was $12,000 per year, payable monthly in advance, and the lessors agreed to furnish heat, and it was provided that if the premises should be appropriated or used for other purposes than as therein expressed, or any portion thereof should be underlet, or the lease be assigned without the consent of the lessors, on the back of the lease, or if any term, condition, or covenant of the lease on the part of the lessees should be violated, then the lessors were authorized to cancel and annul the same, and re-enter and take possession without notice, and to remove therefrom all persons and their property.

In the lease executed by Pickering & Pinska to appellant, of date August 11, 1906, it was provided that the premises were leased for the purpose of conducting a hairdressing and manicuring business, and that such business should be conducted under the name of "Palais Royale Hairdressing and Manicuring Parlors." Pickering & Pinska agreed to furnish heat, light, and janitor service. The lease contained similar provisions in respect to subletting, assigning, and re-entry upon default as were in the lease from the Philipsborn Company to Pickering & Pinska, and contained also the following clause: "It is understood and agreed that this agreement is in all things subject to the terms and conditions of the lease under which said first parties hold said demised premises, and that this lease does not become effective unless and until it be approved and consented to by the lessors of the first parties."

Appellant admits that he entered into possession of that portion of the third floor covered by the lease without securing the approval and consent of the Philipsborn Company, as provided by the provision above quoted. But appellant founds his rights as a sublessee upon the fact that the provision was waived by the conduct of all the parties. Appellant remained in possession up to about the first of August, 1907, and conducted therein the business of a ladies' hairdressing and manicuring establishment, and during all of that time no objection was made to the fact that he had not secured the approval and consent of the original lessors. During the entire year he paid the rental monthly as it became due, and it was accepted without protest. It is true that appellant did not conduct his busi-

ness under the name of the "Palais Royale Hairdressing and Manicuring Parlors," but no objection was ever made by any one, and so far as Pickering & Pinska were concerned it clearly appears that they have waived all objection on account of the matters above referred to.

The next question is whether there is any evidence to support the respondent's allegation that Pickering & Pinska defaulted in the terms of their lease, and that the Philipsborn Company took possession thereof by reason of such default. If Pickering & Pinska defaulted, either in making the monthly payments, or in subletting, or in assigning the lease, then the Philipsborn Company were entitled to take possession, and the rights of appellant would fall with those of his immediate lessors. The answer alleges that forfeiture was declared because Pickering & Pinska sublet a portion of the premises or assigned the lease on or about the first of June, 1907. We find no evidence to the effect that they had assigned the lease, except what may be inferred from the admitted fact that Mr. Pickering appointed a trustee of his estate during the month of August, 1906. There is no evidence that Mr. Pickering expressly assigned his interest in the lease to the trustee, and, if the appointment of a trustee of his estate had the legal effect of transferring title to his interest in the lease, the lessor did not regard it as a violation of the terms of the lease. The trustee, and Mr. Pinska, were permitted to continue the business in the same manner as before, and under the same lease, without change, for the period of ten months, and no steps were taken to declare a default of the lease upon that ground. There is no evidence of any other assignment or subletting, except to appellant, as already stated. The evidence tends to support the claim of appellant that Pickering & Pinska surrendered the premises and their lease, rather than the claim of respondent that there was a default, a reentry, and then a new lease.

We are also of opinion that the evidence is sufficient to make out a prima facie case that the Philipsborn Company had knowledge of the fact that appellant was in possession of the premises under a lease from Pickering & Pinska. Appellant testified that he told Mr. Philipsborn, on or about August 11, 1906, that he had subleased from Pickering & Pinska. He was in possession over ten months,

conducting a business likely to be known to the owner of the building. Under such circumstances the Philipsborn Company had waived its right on August 1, 1907, to declare a forfeiture of appellant's lease upon the ground that no express or written consent to his occupancy had been given.

We now reach the next step, viz., whether, upon the execution of the subsequent lease on June 18, 1907, respondent had knowledge of the rights of appellant, and leased the premises subject thereto. This later lease contained the following provision: "It is further agreed between the parties hereto that said lessee shall take said premises on August 1, 1907, subject to the rights, if any, of A. D. Aldrich * * * to occupy a portion of said premises." At the time of its execution appellant was in possession, conducting the business in the same manner as he had been doing for ten months. Respondent was informed of the fact that he claimed the right to hold possession under and by virtue of the lease between himself and Pickering & Pinska. The evidence is sufficient to establish a prima facie case that, as between the Philipsborn Company and appellant, the relation of landlord and tenant existed, and that respondent rented the building impressed with that burden, and therefore could terminate that relation by resorting only to lawful means.

We now come to the final question, and that is: Do the facts appearing from the record amount to an eviction of appellant from the premises which he was occupying? It is customary, upon a change of tenants, to take out the water, gas, and electric meters. While making repairs, it may have been necessary to interfere somewhat with the ingress and egress to and from appellant's apartments. Conceding that appellant was required to submit to the inconvenience arising from temporary repairs, it fairly appears that the repairs were not being accomplished with regard to appellant's occupancy. Respondent claimed appellant had no rights which it was compelled to recognize, refused to consider him a tenant, and informed him he could only remain in the building under an increased rental. This attitude of respondent, when considered in connection with the manner in which appellant's occupancy was interfered with, is sufficient, unexplained, to warrant the conclusion that the design of respondent was to force appellant to pay a higher rental or vacate the premises.

True, some of the acts done, such as taking out the meters, were not performed directly by respondent; but the entire scheme of repairs was for its benefit and presumably under its direction.

Our conclusion is that the case should have been submitted to the jury.

Reversed.