**PARRIS–WEST MAYTAG HOTEL COR-
PORATION, Inc., Appellee,**

**v.**

**CONTINENTAL AMUSEMENT COM-
PANY, Appellant.**

No. 53454.

Supreme Court of Iowa.

June 10, 1969.

Herrick, Langdon, Belin & Harris, Des Moines, for appellant.

Cross, Hamill, Selby & Updegraff, Newton, for appellee.

MOORE, Justice.

This is an appeal from a forcible entry and detainer decree ordering defendant's removal from a theatre and two adjacent spaces in the Maytag Hotel Building in Newton. Plaintiff alleged defendant as a sublessee had no right of possession as the primary lease had been forfeited after default by lessee. The trial court found against defendant's pleaded affirmative defense that the primary lease had been voluntarily surrendered long before the attempted forfeiture and therefore defendant's rights under its sublease remained in effect.

The main thrust of defendant's propositions relied on for reversal is the primary lease had been voluntarily surrendered by the parties thereto which did not affect defendant's rights under its sublease. De-

fendant also asserts plaintiff's claimed forfeiture came long after the voluntary surrender and plaintiff had waived any claim there had not been a voluntary surrender of the primary lease. We conclude from the record our determination of the first issue is decisive of the appeal. We reverse.

I. Forcible entry and detainer in district court is an action in equity. Code section 648.5. Our review is de novo. Rule 334, Rules of Civil Procedure.

II. For a number of years prior to 1960 E. W. Zeug and Helene M. Zeug, his wife, owned, operated and maintained through a corporate structure, the quarter block Maytag Hotel Building in Newton. Defendant or predecessors leased the "Capitol Theater" area therein through written leases during that period.

Subsequent to Mr. Zeug's death, April 29, 1960, the Hotel Maytag Company, an Iowa Corporation, then titleholder of the real estate, deeded the property to Mrs. Zeug. Defendant's existing lease was assigned by the corporation to Mrs. Zeug on April 30, 1960. Thereafter she sold the hotel building and furnishings therein on installment contract and assigned defendant's lease to the purchaser, Davis-Maytag Hotel Company, Inc. On March 12, 1964, Davis-Maytag extended defendant's lease to June 30, 1977.

Early in 1967 Helene M. Zeug was obliged to forfeit the installment contract with Davis-Maytag Hotel Co., Inc., and again acquired full ownership of the building.

Mrs. Zeug's testimony includes: "In 1967 I took action to forfeit the interest of the Davis-Maytag Hotel Company and after I forfeited out their interest I took over the operation of the building myself on May 1, of 1967 and in connection therewith I executed a lease with a new corporation that I formed. That would be Exhibit P–2, entitled 'City Building Lease', I am the sole stockholder of Zeug Maytag Hotel Company, Inc. I was and am the sole director and the sole officer of this corporation. That would be president, vice president, secretary and treasurer. According to this lease, my corporation agreed to pay myself $2,000 a month on the 15th of each month. On its face the lease is for a term of twenty years. I started negotiations with Mr. Parris and West regarding the sale of the Maytag Hotel Building property towards the end of October or first of November of 1967."

The lease provided for subleasing and that taxes, upkeep and insurance were to be paid by the lessee. $1700 was for real estate and $300 of the monthly rental was for personal property.

Mrs. Zeug further testified that when she took the property back from Davis-Maytag by forfeiture she knew she was not going to run it long because she intended to sell it. She stated Zeug Maytag Hotel Company, Inc., was formed and the property leased to it because "we had always been incorporated when we were in business" and further there was some discussion of the social security benefits at that time.

May 24, 1967, Zeug Maytag Hotel Company, Inc., pursuant to Mrs. Zeug's signature as president entered into a new lease with defendant covering the theatre and the spaces on each side. The provisions were the same as the prior existing lease except it granted an option to renew for an additional five year term. Three written and sixteen oral leases with occupants of the building were continued without change after the lease between Mrs. Zeug and her solely owned corporation.

Early in November 1967 Mr. Parris and Mr. West began negotiating with Mrs. Zeug for the purchase of the hotel building property. She testified without dispute that in late November or early December they orally agreed on a price of $205,000 but the buyers later receded from this price and after a number of conferences a contract of sale for $150,000 was finally executed as of

February 1, 1968. It was a cash over mortgage transaction. The buyer was Parris-West Maytag Hotel Corporation, Inc., plaintiff here.

The contract, Exhibit P–4, provides it is subject to existing leases and that Mrs. Zeug could continue to occupy an apartment in the hotel building without charge. The reservation of the apartment was not mentioned under the $205,000 price discussion but was made a part of the agreement for sale at $150,000.

Mrs. Zeug testified she never discussed with Mr. Parris and Mr. West the fact she had a lease with her own corporation and that she never intended to sell the building for $150,000 and then continue to be liable under the lease between herself and her corporation.

She further testified that throughout the negotiations leading up to the contract she did discuss with Parris and West the existing leases, including the Continental Amusement Company lease. She stated she told them exactly what it was and told them about the monthly rental, the percentage rental and the length of the term. This was corroborated by the testimony of Collin Fritz, a bank officer who took part in the sale negotiations.

Mr. Fritz testified he notarized the signatures of the parties to the contract, Mrs. Zeug's signature on a warranty deed and there was a bill of sale, exhibit D–1, which was contemporaneously executed with the other instruments on February 1, 1968.

Mr. Fritz stated: "This bill of sale is part of the original papers called for in the contract and my name appears thereon as notary. It is signed by Helene M. Zeug and also by Zeug Maytag Hotel Company, Inc. by Helene M. Zeug and I notarized it twice, once for the individual signature and once for the corporation signature. The corporation acknowledgment says among other things that she is the sole officer of said corporation."

This bill of sale, Exhibit D–1, provides that "Helene M. Zeug personally and Zeug Maytag Hotel Company, Inc. * * * does hereby sell, assign, transfer and set over unto Parris-West Maytag Hotel Corporation, Inc. * * * All of the furniture, fixtures, equipment and supplies, except food, cigar counter and beverage inventory on hand, the house bank and unbroken packages of linens and supplies on hand and in inventory as of the close of business on January 31, 1968, which is now located at Hotel Maytag, North 2nd Avenue East, Newton, Iowa, in the possession of Helene M. Zeug and Zeug Maytag Hotel Company, Inc. * * * Sellers shall pay ½2th of the taxes against said property due and payable in 1969."

Parris-West took over February 2, 1968 and a few days thereafter Mrs. Zeug handed to said company defendant's $700 check dated January 31, 1968 for its February theatre rent. It was payable to Zeug Maytag Hotel Company, Inc. Plaintiff deposited the check to its account by its own endorsement alone and the check was paid by defendant's Des Moines bank on February 6, 1968. Defendant's tender of each month's rent thereafter was refused by plaintiff.

Mr. Parris testified he lived at the hotel for several weeks prior to its purchase, he had attended the theatre, investigated the rentals without seeing any of the leases, had an expert appraise the property but did not learn about the lease between Mrs. Zeug and her solely owned corporation until the first part of February. An investigation followed and he was furnished a copy of that lease. Plaintiff continued to operate the hotel and collect rent from all tenants, including plaintiff's law firm, except defendant. Plaintiff tendered none of this rent to Zeug Maytag Hotel Company, Inc.

On April 3, 1968 plaintiff gave "Notice Terminating Lease" to Zeug Maytag Hotel Company, Inc., by delivering it to Mrs. Zeug. Defendant was advised of this forfeiture notice which was on the grounds rent had not been paid, the corporation had not paid insurance costs and had failed to

maintain and repair the building on the leased premises. Neither Zeug Maytag Hotel Company, Inc., nor defendant took any affirmative action to resist the forfeiture proceeding. Their position then, as now, is the lease had been voluntarily surrendered on January 31, 1968.

Following a notice to quit, served on defendant April 28, 1968, plaintiff brought this forcible entry and detainer action on the grounds defendant had no possessory rights as a sublessee after forfeiture of the main lease. The sharp fact issue of whether the main lease had been voluntarily surrendered was raised by defendant's answer which so alleged.

Mrs. Zeug testified she wrote a $2000 check on December 19, 1967 for the December 15 rent due from her corporation to herself but that she only made the next check, dated January 22, 1968 for $1000 to cover the rent due for the balance of January.

Additional testimony of Mrs. Zeug includes:

"Q. Was it your intent either as landlord or as the sole officer and director of the Zeug Maytag Hotel Company, Inc., that the lease Exhibit P–2 continue beyond the end of January, 1968? A. No. * * *

"Q. Mrs. Zeug, what is the fact as to whether or not the lease, Exhibit P–2 is still in existence so far as you're concerned, or has it been terminated? A. It's been terminated. * * *

"Q. When did the lease terminate? A. After January 31.

"Q. 1968? A. 1968.

"Q. What is the fact as to whether or not this was by mutual agreement between you as lessor and your corporation as lessee? A. Yes."

III. A surrender, as the term is used in the law of landlord and tenant, is the yielding up of the estate to the landlord so that the leasehold interest becomes extinct by mutual agreement between the parties. Hawbaker v. Iowa State Hgwy. Comm., 253 Iowa 573, 578, 113 N.W.2d 296, 299; Ballenger v. Kahl, 247 Iowa 721, 724–726, 76 N.W.2d 196, 198, 199; Hickman v. Breadford, 179 Iowa 827, 832, 162 N.W. 53, 55; 32 Am.Jur., Landlord and Tenant, section 900; Anno. 78 A.L.R.2d 933, 938. A similar definition is found in 51C C.J.S. Landlord and Tenant, § 120 and at pages 389, 390 the editor states: "What does or does not constitute a surrender of the lease and an acceptance thereof must be determined from all the facts in each particular case."

In Martin v. Stearns, 52 Iowa 345, 347, 3 N.W. 92, 93, we state the above definition of a surrender and say: "To constitute such agreement it is not necessary that express words should be used to that effect. It is sufficient if the reasonable inferences from the acts of the parties, and the circumstances under which they are performed, is that such was the understanding."

South Falls Corporation v. Kalkstein, 5 Cir., 349 F.2d 378, 384, states: "In Texas a lease agreement may be terminated only by the mutual consent of lessor and lessee. (Citations) An agreement to terminate may be inferred from the objective acts of the parties. (Citations) Hence, there is said to be a surrender by operation of law whenever the parties have so acted that it would be inequitable for either to assert the continued existence of the lease."

IV. The surrender of a primary lease does not affect a sublease. It remains in full force and effect, and the lessor of the primary lease, or his successors, becomes the lessor of said sublease. McKay Co. v. Savery House, 184 Iowa 260, 271, 168 N.W. 295, 299; Goldberg v. Tri-States Theatre Corporation, 8 Cir., 126 F. 2d 26, 28.

32 Am.Jur., Landlord and Tenant, section 425, page 345, states: "The surrender of a lease by a lessee to his lessor, after a

sublease, will not be permitted to operate so as to defeat the estate of the sublessee."

51C C.J.S. Landlord and Tenant § 129b, page 412, states: "The rights of persons not parties to the original lease which have accrued before the surrender are not in any way affected thereby. A surrender by the lessee does not affect an assignee of the lease, or a sublessee, or anyone holding under the lessee, unless he has consented thereto, * * *."

V. Another well established rule in the law of landlord and tenant is that if the original tenant because of some breach on his part has incurred a forfeiture of his lease, and for that reason the landlord annuls the lease, the landlord is entitled to the possession as against the sublessee. McKay Co. v. Savery House, supra; 32 Am.Jur., Landlord and Tenant, section 424, page 344; 51C C.J.S. Landlord and Tenant § 116, page 371.

VI. Plaintiff argues defendant failed to meet its burden to prove a mutual agreement between Mrs. Zeug and her solely owned corporation. Admittedly we have an unusual factual situation as Mrs. Zeug was the lessor and the only officer of the lessee corporation. Certainly there was no specifically expressed oral agreement. However, her testimony regarding termination of the lease as of January 31, 1968 is strongly supported by several facts. They include execution and acceptance of the check for one-half month's rent from January 15 to 31, the provision in the contract with plaintiff pertaining to the rent-free apartment for Mrs. Zeug, the provision in the contract itself whereby Zeug Maytag Hotel Company, Inc., joined in the bill of sale, joint execution of the bill of sale by Mrs. Zeug and her corporation, she sold the property subject to existing *leases*, the provision whereby Mrs. Zeug indemnified plaintiff from any debts owed by her corporation, delivery by Mrs. Zeug to plaintiff of rent checks of several tenants for their February rent, and plaintiff's possession and operation of the hotel and building from and after February 1 with no claim by Zeug Maytag Hotel Company, Inc., to any of the rent collected by plaintiff.

From the testimony of Mrs. Zeug and her acts and conduct as an individual and on behalf of her solely owned corporation the inference and conclusion is clear the lease between Mrs. Zeug and her corporation was, by mutual agreement, surrendered as of January 31, 1968. The lease was nonexistent in April when plaintiff gave notice of forfeiture. Plaintiff was not entitled to the relief granted by the trial court.

VII. Plaintiff-appellee's motion to expunge the supplemental record improperly filed by defendant-appellant is sustained. Cost of printing it, $49.59, is taxed against defendant-appellant. Other costs of this appeal are taxed against plaintiff-appellee.

Reversed and remanded to the trial court for decree and judgment for costs against plaintiff.

All Justices concur.