**Harold WARNERT, Respondent,**

v.

**MGM PROPERTIES, Defendant,**

**Richard Schmidt, etc., Appellants.**

**No. CX–84–1519.**

Court of Appeals of Minnesota.

Feb. 12, 1985.

Review Denied April 18, 1985.

Brian F. Kidwell, Hall, Byers, Hanson, Steil & Weinberger, P.A., St. Cloud, for respondent.

Stanley J. Mosio, St. Paul, John R. Koch, Reichert, Wenner, Koch & Provinzino, P.A., St. Cloud, for appellants.

Considered and decided by FORSBERG, P.J., and PARKER and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Harold Warnert began this unlawful detainer proceeding against his tenant, MGM Properties, and against MGM Properties' subtenant, Richard Schmidt, alleging MGM Properties' failure to pay rent. The day before trial MGM Properties and Warnert entered into a stipulation of settlement that included MGM Properties' surrender of the premises to Warnert. Warnert and Schmidt proceeded to hearing, with Schmidt defending by depositing the claimed arrearages with the court. The trial court concluded that Warnert was entitled to possession of the property as a matter of law and ordered a writ of restitution to issue against Schmidt.

Schmidt filed notice of appeal and a $60,000 bond requesting that the trial court allow him to retain possession of the premises pending appeal. Warnert also filed a $60,000 bond and requested immediate possession of the premises. On August 29, 1984, the trial court determined Warnert was entitled to possession pending appeal and ordered the writ of restitution to issue. Schmidt then petitioned this court for a writ of prohibition forbidding execution of the writ of restitution. This court denied the petition in an order dated September 4, 1984, and set the matter for full briefing. We now reverse the trial court's order granting Warnert judgment on his complaint.

## FACTS

In 1982 defendant Richard Schmidt purchased a retail liquor sales franchise from MGM Liquor Warehouse International, Inc., a corporation affiliated with MGM Properties. A short time later Schmidt and representatives from MGM Properties met with respondent Harold Warnert to negotiate a lease for space in Warnert's shopping

center known as the Midtown Square development in St. Cloud, Minnesota.

On August 26, 1982, MGM Properties and Warnert executed a lease for a term of seven and one-half years. The lease is a complex ten-page commercial lease form with a two-page addendum of specific terms and a four-page addendum dealing with construction of the premises. Rent is based on the gross sales of the business occupying the building, subject to a minimum annual rent of $7 per square foot. The minimum rent clause does not apply until Midtown Square reaches 60 percent occupancy. The lease provided that MGM Properties could assign or sublet the leased premises to an MGM Liquor Warehouse International franchisee without obtaining Warnert's consent, for termination by the landlord at the expiration of the term, and for termination at the option of the landlord if there is a default in any covenant or payment due under the lease.

On October 1, 1982, MGM Properties and Schmidt executed a five-page document entitled "Sublease," which incorporated by reference the prime lease of August 26, 1982. The term of the sublease is defined as follows:

> The term of this Sublease shall commence on the date determined in accordance with Section 3 of the Prime Lease and shall terminate one [1] day prior to termination of the Prime Lease term [the Term].

The sublease also provides:

> If the Prime Lease is terminated * * * for any reason other than due to breach thereof by sublessor, this Sublease shall automatically cease and terminate * * *.

Warnert maintains that soon after MGM Properties assumed control of the premises, it defaulted on rental payments. By the time of the hearing on August 15, 1984, Warnert claimed $27,025.13 was due on the prime lease. Although the issue was not litigated, the trial court did find that the

allegations in the complaint were true, and Schmidt does not dispute that MGM Properties breached the prime lease.

Schmidt and Warnert do dispute whether Schmidt breached the terms of the sublease by failing to pay rent, and that issue was also not litigated. Schmidt has occupied the premises since November 1983 and claims he began paying rent directly to Warnert in May 1984.

On August 7, 1984, Warnert began an unlawful detainer action against both MGM Properties and Schmidt, alleging MGM Properties had breached the prime lease. On August 14, 1984, the day before the hearing, MGM Properties entered a "Stipulation of Settlement" with Warnert and agreed to surrender its rights under the lease to Warnert. The next day at the unlawful detainer hearing Schmidt was advised of the settlement and the "termination" of the prime lease.

At the hearing Schmidt requested a jury trial but offered to pay the rent MGM Properties allegedly owed on the prime lease provided he could continue occupancy of the premises. When Warnert refused the tender Schmidt deposited $27,025.13 in court pending resolution of his occupancy rights. Warnert claimed that he was not required to accept the tender and that he was entitled to possession as a matter of law because, among other things, MGM Properties had not obtained written permission from Warnert to sublet the property. Both Warnert and Schmidt represented to the trial court that written consent was required under the lease.

On August 22, 1984, the court held that because MGM abandoned the prime lease Schmidt could not succeed to MGM's position, and the court ordered issuance of a writ of restitution against MGM Properties and Schmidt. Schmidt then brought this appeal and requested a writ of prohibition, which this court denied.[1]

---

1. The unlawful detainer is not designed for extensive litigation, and the proceeding should not be used as a substitute for the common-law remedy of ejectment. The issues of abandonment and surrender raised in this case are clearly not amenable or appropriate to a summary

## ISSUE

Is a subtenant entitled to possession after the sublessor surrenders its lease to the lessor?

## ANALYSIS

The lease documents present a number of issues that must be addressed before general principles of landlord-tenant law are applied. First, the prime lease between Warnert and MGM does not require MGM Properties to obtain Warnert's written consent before subletting to Schmidt. Although Article 21 in the main document includes such a requirement, Article 49, contained in the two-page addendum, specifically exempts Schmidt from a written approval requirement:

> Notwithstanding Article 21 hereof, Landlord agrees that Tenant may, without Landlord's consent and upon written notice to Landlord, assign or sublet this Lease to a franchisee of MGM Liquor Warehouse International.

Acknowledging that Article 49 was overlooked by both parties before the trial court, Warnert does not now dispute that Schmidt was a permitted subtenant but contends that the trial court's order is still correct because MGM's surrender of the lease terminated Schmidt's subtenancy.

■ A default in the lease payments under the prime lease clearly provided Warnert with an option to terminate the prime lease. The lease's termination procedure requires notice, provides a right to cure and is stated as additional to any other remedies available under the law. Warnert did not follow that procedure. He chose instead to initiate an unlawful detainer proceeding. The trial court's order permits the interpretation that a termination took place under the lease as a result of the stipulated surrender, but this is not the case. The surrender stipulation is limited to the release of interests and liabilities created under the lease. By its own language it does not purport to terminate the prime lease. The sublease itself contains two provisions that govern Schmidt's rights under a *termination* of the prime lease, but no provision for determining Schmidt's rights under a *surrender* of the prime lease. Because the prime lease has not been terminated, the provisions of the sublease dealing with termination of the prime lease are not activated.

Warnert maintains that even absent a termination under the lease, general principles of landlord-tenant law dictate that Schmidt's right to possession of the property ceased when MGM Properties surrendered its rights under the prime lease.

■ When a tenant transfers its possessory interest under its lease to another for less than the whole term of that lease, it creates a subtenancy. *See Kostakes v. Daly*, 246 Minn. 312, 315, 75 N.W.2d 191, 193–94 (1956). The agreement between MGM Properties and Schmidt provided that Schmidt's possessory interest terminated one day before the prime lease terminated. Therefore, Schmidt is a subtenant under his agreement with MGM Properties.

■ A subtenant contracts with a sublessor for a portion of the sublessor's estate under the prime lease. Neither privity of estate nor privity of contract exist between the subtenant and the lessor. *See Williams v. Michigan Central R.R. Co.*, 133 Mich. 448, 452, 95 N.W. 708, 709 (1903). The general rule is thus that termination of the prime lease terminates a subtenant's possessory rights under the sublease. *Hawley Corp. v. West Virginia Broadcasting Corp.*, 120 W.Va. 184, 197 S.E. 628 (1938); *Appleton v. Ames*, 150 Mass. 34, 22 N.E. 69 (1889); Annot., 118 A.L.R. 120 (1939).

Although this issue has not been addressed by Minnesota courts, the general rule provides support for the trial court's holding that MGM Properties' surrender of

detainer proceeding. *See Berg v. Wiley,* 303 Minn. 247, 250, 226 N.W.2d 904, 907 (1975). The postural difficulties presented in this case demonstrate the wisdom of this rule. Plaintiff's proper remedy was an ejectment action, where necessary legal procedures and equitable remedies were available and the right to possession and damages could be resolved in one action.

its rights also extinguished Schmidt's possessory rights. However, there is a line of cases that contravenes this rule and allows a subtenant to retain possessory rights when its sublessor surrenders the lease to the lessor. This common-law doctrine recognizes the lessee's disability to surrender to the landlord that part of the estate which has already been alienated to the sublessee. Note, *Subtenant's Duty to Pay Rent After Surrender of the Main Lease,* 45 Yale L.J. 1317 (1936). *See also Brunswick Corp. v. Berlo Vending Co.,* 196 So.2d 497 (Fla.Dist.Ct.App.1967); *Shaw v. Creedon,* 133 N.J.Eq. 397, 32 A.2d 721 (1943); *Aldrich v. Shoe Mart Co.,* 108 Minn. 15, 121 N.W. 422 (1909). In *Parris-West Maytag Hotel Corp. v. Continental Amusement Co.,* 168 N.W.2d 735 (Iowa 1969), the rule was stated by the Iowa Supreme Court:

> The surrender of a primary lease does not affect a sublease. It remains in full force and effect, and the lessor of the primary lease, or his successors, becomes the lessor of said sublease.

*Id.* at 738. The additional rationale of these cases is that a subtenant is entitled to protection from acts by sublessors that destroy or impair rights the sublessors themselves transferred in a sublease agreement. *See Baum v. Tazwell,* 26 N.J.Misc. 292, 296, 61 A.2d 12, 14 (1948).

Warnert argues that this rule should not apply because MGM Properties was in default at the time it surrendered the prime lease. Therefore, MGM Properties did not voluntarily surrender the lease when it entered the stipulations but simply agreed not to contest Warnert's action. Warnert cites the following language from *Parris-West* which appears to support his position and qualify the surrender rule:

> Another well established rule in the law of landlord and tenant is that if the original tenant because of some breach on his part has incurred a forfeiture of his lease, and for that reason the landlord annuls the lease, the landlord is entitled to the possession as against the sublessee.

168 N.W.2d at 739. Warnert also relies upon *National Shawmut Bank v. Correale Mining Corp.,* 140 F.Supp. 180, 184 (S.D.W.Va.1956), and *Hawley Corp. v. West Virginia Broadcasting Corp.,* 120 W.Va. 184, 197 S.E. 628 (1938). *National Shawmut,* citing *Hawley,* holds that surrender of a lease subject to forfeiture for breach does not prevent termination of a sublease.

■ However, the forfeiture rule and the reasoning that supports it do not apply in this case because MGM Properties' breach of the lease does not constitute a forfeiture. First, as discussed above, Warnert did not terminate the lease after default in the rental payments but instead served a complaint in unlawful detainer. Courts in other jurisdictions have held that commencement of a suit to cancel a lease does not cause a lessor to forfeit its rights until those rights have been judicially determined. *See, e.g., Kirkland v. Odum,* 156 Ga. 131, 136, 118 S.E. 706, 708 (1923); *Streeter v. Middlemas,* 240 Md. 169, 176, 213 A.2d 471, 475 (1965).

Second, the structure of the unlawful detainer proceeding itself shows that a forfeiture has not occurred. Minn.Stat. § 504.02 (1982) provides:

> In case of a lease of real property, when the landlord has a subsisting right of reentry for the failure of the tenant to pay rent he may bring an action to recover possession of the property and such action is equivalent to a demand for the rent and a reentry upon the property; but if, at any time before possession has been delivered to the plaintiff on recovery in the action, the lessee or his successor in interest as to the whole or any part of the property pays to the plaintiff or brings into court the amount of the rent then in arrears, with interest and costs of the action, and an attorney's fee not exceeding $5, and performs the other covenants on the part of the lessee, he may be restored to the possession and hold the property according to the terms of the original lease.

*See also 614 Co. v. D.H. Overmyer Co., Inc.*, 297 Minn. 395, 397, 211 N.W.2d 891, 893–94 (1973). The *National Shawmut* and the *Hawley* cases were both decided under West Virginia law, which does not have a redemption provision in its laws, and therefore the cases are distinguishable.[2] When Schmidt deposited the claimed rent arrearages into court, he therefore prevented a termination or forfeiture.

 Warnert also contends that Schmidt should not receive the benefit of the surrender rule because Schmidt had defaulted under the terms of his sublease with MGM Properties, thus leading MGM Properties in turn to default on the prime lease. Schmidt, however, has consistently claimed that he did not breach the sublease. The trial court took no evidence, and it is impossible for this court to judge the parties' conflicting assertions on the amounts Schmidt paid MGM Properties or on MGM Properties' performance of its obligations under the sublease. Warnert did not plead Schmidt's breach in his complaint, and the trial court made no findings on that issue. Since a plaintiff in an unlawful detainer action has the burden of proving its case, we cannot assume Schmidt was in default. *See Hennessey v. Pederson*, 28 Minn. 461, 463, 11 N.W. 63, 64 (1881). Furthermore, any default was arguably cured by Schmidt's deposit of the total rents claimed to be due.

For these reasons we hold that MGM Properties' surrender of the prime lease did not terminate Schmidt's right to possession of the premises. Under the surrender rule applied in *Parris-West Maytag Hotel Corp. v. Continental Amusement Co.*, MGM Properties' surrender of the lease caused Warnert to "step down" to MGM Properties' position as sublessor under the sublease. Warnert's right to restitution of the property in the unlawful detainer proceeding thus became subject to Schmidt's right to retain possession by payment of the sums due and owing.

2. *See University Community Properties v. New Riverside Cafe*, 268 N.W.2d 573, 576 & n. 5 (1978) (only six other states, not including West

Schmidt's deposit of these sums with the court under Minn.Stat. § 504.02 redeemed his tenancy.

## DECISION

The writ of restitution was issued in error. We reverse the trial court's order for judgment.

Reversed.

Virginia, have statutes granting tenants a right of redemption).