**LON and ROSA SCHWARTZ, Plaintiffs**

**v.**

**BOBBY'S INTERNATIONAL, INC., Defendant**

Civil No. 905/1991

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

December 12, 1991

HENRY L. FEUERZEIG, ESQ. (DUDLEY, TOPPER & FEUERZEIG), St. Thomas, V.I., *for plaintiffs*

RICHARD E. GRUNERT, ESQ. (GRUNERT, STOUT, MOORE & BRUCH), St. Thomas, V.I., *for defendant*

SMOCK, *Judge*

### MEMORANDUM OPINION AND ORDER

This matter came before the court on October 24, 1991, on the complaint of the plaintiffs, Lon and Rosa Schwartz (the "Schwartzes"), alleging that the defendant, Bobby's International, Inc., a Virgin Islands corporation (hereinafter "Bobby's"), should be

evicted from certain premises owned by the Schwartzes. The Schwartzes by motion also requested that Bobby's counterclaim against them be dismissed, as well as the Third-Party Complaint filed against Rikki's, Inc. (hereinafter "Rikki's"). Bobby's in turn has pending a motion to transfer this matter to the civil docket of the court. At the time of the hearing, the court reserved its ruling on the pending motions, and took testimony from both the Schwartzes and Chandru Jagtiani, the president of Bobby's.

## I. FACTUAL BACKGROUND

The Schwartzes are the owners of Parcel No. 15 Dronningens Gade, Queen's Quarter, Charlotte Amalie, St. Thomas, Virgin Islands. These premises are suitable for retail operations and, on or about August 23, 1983, the Schwartzes entered into a lease of the building on those premises with William Berg. It was specifically understood and agreed by the parties at that time that Mr. Berg was acting as a promoter and on behalf of a soon to be formed corporation, Rikki's. The lease was for an initial term of ten (10) years, with an option to extend the term for an additional five (5) years.

On June 1, 1984, the Schwartzes and Rikki's executed an addendum to the lease in which it was agreed that Rikki's would succeed to the interest of Mr. William Berg, and that certain additional space would be added to the premises. In April 1986, the Schwartzes and Rikki's executed a second addendum by which Rikki's leased yet further space at No. 15 Dronningens Gade. The lease, together with both addenda, shall hereinafter be referred to as the "Master Lease."

On October 13, 1986, Rikki's entered into a sublease with Bobby's concerning a certain "Section A" of the premises. The Schwartzes, by letter dated October 13, 1986 (Plaintiff's Exhibit No. 6), gave their consent to the sublease, but indicated, in part, therein:

Our consent is hereby given upon the following express terms and conditions:

1. Rikki's, Inc. shall continue to be the prime tenant directly occupying not less than 1,000 square feet of the entire leased premises.

2. We shall have no direct relationship with or obligation to the sublessee, but shall continue to deal directly with Rikki's, Inc. including our obligations as lessor to the lessee of the premises under the terms of our Lease Agreement dated August 23, 1983 as modified.

10

\*　　　\*　　　\*

4. The occupancy of sublessee and Rikki's, Inc. shall be in strict compliance with the terms of the Master Lease and any default by sublessee or Rikki's, Inc. under said Master Lease shall result in the termination of said lease in accordance with its terms and sublessee shall not have the right to cure any default by Rikki's, Inc. under the Master Lease.

This letter was addressed to Rikki's, not Bobby's. The president of Bobby's, Chandru Jagtiani, nevertheless acknowledged that he later became aware of the contents of that letter.

It appears that all parties fulfilled their respective obligations under both the Master Lease and the sublease, and problems arose only after Rikki's assigned its Master Lease to Colorao's Perfumes, Inc. (hereinafter "Colorao's") on March 23, 1987 (Plaintiff's Exhibit No. 7). The Schwartzes consented to this assignment, and it does not appear that they received any consideration for giving such consent.[1]

On June 24, 1991, the Schwartzes brought an action for eviction against Colorao's[2] alleging, inter alia, that Colorao's had defaulted in the timely payment of rent and the failure to provide evidence of insurance for the premises. The matter was scheduled for a hearing on July 16, 1991. Immediately prior thereto, on July 15, 1991, Colorao's filed a voluntary petition in bankruptcy,[3] and the case was continued without date.[4]

The Master Lease contains the following provision in Article XII:

If a petition in bankruptcy shall be filed by lessee, or if lessee shall be adjudicated bankrupt, or if lessee shall make a general assignment for the benefit of creditors, or if any proceeding based upon the insolvency of the lessee shall be commenced in

---

[1] In the assignment, the Schwartzes further agreed to release Rikki's from any of the terms and conditions of the Master Lease.

[2] Lon and Rosa Schwartz v. Colorao's Perfumes, Inc., Civil No. 601/1991, Territorial Court of the Virgin Islands, Division of St. Thomas and St. John.

[3] In Re: Colorao's Perfume, Inc., Case No. B-391-00020, United States Bankruptcy Court, District Court of the Virgin Islands, Division of St. Thomas and St. John.

[4] The Schwartzes did thereafter file a motion in Civil No. 601/1991 for an order requiring the debtor to properly assume or reject the lease, but that motion is now mooted.

11

any court of law, then the lessors may terminate this lease by giving written notice to lessee of their intention to do so.

During the course of the bankruptcy proceedings, the Schwartzes and Colorao's agreed in a certain stipulation that the lease would be rejected. That stipulation provided, in part, that,

At present, the Debtor [Colorao's] is in default under the Lease due to, among other things:

(a) failure to pay rent for the months of June and July, 1991, with accrued interest;

(b) failure to obtain or provide evidence of insurance as required under the Lease; and

(c) failure to pay its proportionate share of real property taxes assessed with respect to the Premises as required by the Lease.

4. The Debtor is presently unable to cure the foregoing defaults and does not foresee an ability to promptly cure such defaults in the near future. Furthermore, the Debtor cannot provide any assurance of future performance under the Lease.

5. Given the Debtor's past unsuccessful efforts to sell or otherwise convey its interest in the Lease for value, it is agreed that the Lease is of inconsequential value or a burden to the estate.

\* \* \*

7. The Debtor wishes to reject the Lease and is prepared to immediately surrender the Premises to the Landlord [the Schwartzes]. The Landlord consents to the rejection of the Lease and desires restitution of the Premises.

Pursuant to the above stipulation, by Order dated August 29, 1991, the Honorable William H. Gindin, U.S. Bankruptcy Judge, ordered that the Master Lease between Colorao's and the Schwartzes be rejected, and Colorao's was ordered to immediately vacate the premises. It later did so.

While all of this legal maneuvering was ongoing between the Schwartzes and Colorao's, Bobby's continued in possession of its portion of the premises. Although aware that an eviction action had been filed against Colorao's, Mr. Jagtiani did not move to intervene at that time. In July 1991, Mr. Jagtiani made verbal contact

12

with Mr. Lon Schwartz and requested negotiations with the objective being either (a) a new lease agreement or (b) an agreement which would allow Bobby's to assume the Master Lease. During the course of the negotiations, the Schwartzes demanded that Bobby's pay its rent directly to them. Specifically, they demanded rent for the month of September 1991, although rent under the Master Lease was payable on the 15th of each month. Following unsuccessful negotiations, however, a letter of termination by the Schwartzes was directed to Bobby's, and this litigation ensued.

## II. DISCUSSION

■ It has generally been held that a sublessee can acquire no greater rights in premises than that of the sublessor. Xerox Corporation v. Listmark Computer Systems, 361 A.2d 81, 85 (N.J. 1976). The rationale is that, "[a] subletting creates a relationship of landlord and tenant between the tenant . . . and subtenant . . . , but there is no privity of contract between the landlord . . . and the subtenant . . . , and anything which defeats the tenants' estate will defeat the subtenant's estate." Wehrle v. Landsman, 92 A.2d 525, 528 (N.J. 1952), see also Marino v. Mendez, 579 A.2d 373, 375 (N.J. 1989) and Baum v. Tazwell, 61 A.2d 12, 26 (N.J. 1948).

■ There is, however, an exception to this general rule which arises in a case where there is a surrender of the master lease by the lessee to the landlord:

> It seems to be universally held by the courts that the rights of subtenant will not be destroyed or impaired by a surrender of the main lease. It would be unconscionable where the express terms of a sublease have not been violated to allow the landlord and lessee to terminate the original lease by their mutual consent over the protest of the subtenant.

Byrd v. Peterson, 186 P.2d 955, 958 (Ariz. 1947). The initial issue is, then, whether the Stipulation and Order entered in the Bankruptcy Court between Colorao's and the Schwartzes constituted either a forfeiture or a surrender of the Master Lease.

The mere fact that a civil action for eviction, past due rentals or both has been filed by a landlord is not dispositive of the issue. In Warnert v. MGM Properties, 362 N.W.2d 364 (Minn. 1985), the landlord brought an action for unlawful detainer against both his lessee and sublessee. The day before the hearing, the landlord and lessee

entered into a "Stipulation of Settlement," by which the lessee surrendered its rights under the master lease to the landlord. Because no formal judicial determination concerning cancellation of the lease had been made by the District Court, the Court of Appeals held that the lessee's surrender did not terminate the sublessee's right to possession.[5]

■ In the present matter, the parties entered into an extensive stipulation before the Bankruptcy Court, concluding with Colorao's desire ". . . to reject the lease and . . . immediately surrender the Premises . . ." While such a stipulation is admittedly nothing more than a voluntary agreement between parties (and one to which Bobby's was not formally made a party), it was transformed into a formal judicial order by Judge Gindin's signature on August 29, 1991.[6] Although this court would be less than candid in stating that it is troubled by the Schwartzes' apparent failure to apprise the Bankruptcy Court of the sublease held by Bobby's the record here supports a finding that Colorao's forfeited its lease.[7]

■ The fact that Colorao's filed a petition in bankruptcy further undermines Bobby's position. That filing constituted a breach of Article XII of the Master Lease. In Xerox Corporation, supra, the court held that,

> Generally, the tenants of a lessee have no greater rights to possession than their immediate lessor possessed, in the absence of an attornment. [Citation omitted] . . . Where there is a breach of condition contained in the lease, the landlord may terminate the lease with the result that the lessee's tenant's interest is

[5] Minnesota's unlawful detainer statute, Minn. Stat. Sec. 504.02 (1982), is similar in content to our own statute, 28 V.I.C. 294(a). Section 294(a) reads, in part,

If at any time before judgment in such action the lessee or his successor in interest as to the whole or a part of the property pays to the plaintiff or brings into the court the amount of rent then in arrears, with interest, and the costs of the action, and performs the other covenants or agreement on the part of the lessee, he shall be entitled to continue in the possession according to the terms of the lease.

[6] It is true that a rejection of a lease in bankruptcy does not automatically terminate a lease 11 U.S.C. 365(g). Nevertheless, a lease rejection does not necessarily translate into a surrender, where, as here, the situation was later court approved.

[7] It is also true that Bobby's was aware of the filing in Bankruptcy, and never moved to protect its interest in that forum.

14

likewise extinguished. 1 American Law of Property, Sec. 3.62 (1952). Since Compusize's bankruptcy represents a breach of its lease with Xerox, Listmark's interest in the premises is also extinguished, as distinguished from those cases in which it has been held that the voluntary surrender of a lease by a lessee does not operate to extinguish a subtenant's term. See Shaw v. Creedon, 133 N.J.Eq. 397, 400–401, 32 A.2d 721 (Ch. 1943); Louis Schlesinger Co. v. Rice, 4 N.J. 169, 174, 72 A.2d 197 (1950).

361 A.2d at 85. Assuming arguendo that Bobby's had a right to cure any defaults under the master lease pursuant to 28 V.I.C. 292 (a),[8] this was one default that Bobby's would be unable to cure under any set of circumstances.[9]

While this court holds that the Master Lease was properly forfeited and terminated in Bankruptcy Court on August 31, 1991, this matter must nevertheless be dismissed. When negotiations broke down between the Schwartzes and Bobby's, the Schwartzes gave Bobby's a three (3) day notice to quit pursuant to 28 V.I.C. 789(b), following delivery to Bobby's of a September 17, 1991 letter requiring the premises be vacated by September 30, 1991.

■ Because, however, the Schwartzes accepted rent for a new term, September 1 through September 30, 1991, the parties' acts gave rise to a tenancy at will. That being the case, the Schwartzes were obligated to give Bobby's a notice of termination which specified a time ". . . equal to the interval between the times of payment." 28 V.I.C. 752. In this matter thirty days was required. The complaint must therefore be dismissed without prejudice, pending proper compliance with the notice provisions of Chapter 31 of the Virgin Islands Code. Accordingly, it is

ORDERED that the complaint and counterclaim in this matter are hereby DISMISSED without prejudice; and it is further

ORDERED that copies of this Memorandum Opinion and Order shall be directed to Henry L. Feuerzeig, Esq. (Dudley, Topper & Feuerzeig), and Richard E. Grunert, Esq. (Grunert, Stout, Moore & Bruch).

---

[8] It certainly had no contractual right to do so. See Plaintiff's Exhibit No. 6.

[9] It is for this reason the court need not consider whether Bobby's was a "successor in interest" to Colorao's for purposes of Section 292(a).